## AMERICAN FEDERATION OF LABOR ET AL. v. WATSON, ATTORNEY GENERAL, ET AL.

No. 448. Argued February 8, 1946.—Decided March 25, 1946.

584

*Herbert S. Thatcher* argued the cause for appellants. With him on the brief were *Joseph A. Padway, Edward J. Brown, Pat Whitaker* and *Tom Whitaker.*

*J. Tom Watson,* Attorney General of Florida, *Sumter Leitner* and *Howard S. Bailey,* Assistant Attorneys General, argued the cause and filed a brief for appellees. *Ray C. Brown* filed a motion to dismiss for the Cigar Manufacturers Association of Tampa, appellee.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

In 1944 Florida adopted an amendment to her Constitution [1] which reads as follows:

> "The right of persons to work shall not be denied or abridged on account of membership or non-membership in any labor union, or labor organization; provided, that this clause shall not be construed to deny or abridge the right of employees by and through a labor organization or labor union to bargain collectively with their employer."

Shortly thereafter this suit was instituted to enjoin the enforcement of that provision on the ground that it violated the First Amendment, Fourteenth Amendment, and the Contract Clause of Article I, § 10 of the Federal Constitution and was in conflict with the National Labor

---

[1] The amendment, designated as House Joint Resolution No. 13, was passed by the regular session of the legislature in 1943 (L. 1943; p. 1134) and was ratified by the people at the general election held on November 7, 1944.

Relations Act (49 Stat. 449, 29 U. S. C. § 151) and the Norris-LaGuardia Act. 47 Stat. 70, 29 U. S. C. § 101.

· The appellants (plaintiffs below)· are, various national and local labor organizations operating in Florida, individual employee members of those organizations who are citizens of the United States, and three employers doing business in Florida.[2]  Appellees are the Attorney General and other officials of Florida charged with duties of law enforcement and various employers.[3]  The theory of the bill is that· the law in question outlaws any agreement which.requires membership in a labor organization as a condition of employment, all of which we refer to herein as the closed shop. It is alleged that the appellant labor organizations or their affiliates have been designated as the collective bargaining representatives. of employees of numerous employers in Florida and that a large number of those local ·and national unions either have,[4] or desire

---

[2] McCloskey·& Co., a Delaware corporation in the business of building ships at Tampa, Florida; R. J. Gould, engaged in general welding and structural steel building work in Tampa, Florida, and doing business under the name of Gould Welding & Erecting Co.; Tampa Florida Brewery, Inc., a Florida corporation, engaged in the brewery business at Tampa, Florida.

[3] Tampa Shipbuilding Co. and St..Johns River Shipbuilding Co., Florida corporations, engaged in the building·and construction of ships at Florida ports; Weir's Dry·Cleaners & Laundry, Inc., a Florida corporation, engaged in the dry cleaning and laundry business in Tampa, Florida; National Container Corp., a Florida corporation, manufacturing paper containers in Jacksonville, Florida; Cigar Manufacturers Assoc. of Tampa, a voluntary association of· Tampa cigar manufacturers.

These parties were joined as defendants because they had collective bargaining agreements with various of appellant labor organizations. They are called nominal defendants since no relief was sought against them.

[4] It is alleged that some of these agreements are for periods of one ·year with automatic renewal clauses for additional one-year periods,

or are about to become parties to, closed-shop agreements with Florida employers. It is alleged that the closed-shop agreement constitutes the most effective means possessed by organized labor to attain economic security, to deter practices destructive of public policy and the interests of wage earners, and effectively to bargain collectively. It is alleged that all of the defendant employers and two of the three plaintiff employers are parties to closed-shop agreements with some of the appellant unions which expire at various dates in the year 1945 and thereafter continue in effect on a year-to-year basis. These contracts are alleged to be valuable property rights of the appellant unions and their members. It is alleged that one appellant employer (R. J. Gould) and some of the appellant unions are desirous of entering into closed-shop agreements but are prevented from doing so by the Florida law. It is alleged that the same problem obtains with respect to other employers in Florida.

The bill alleges that appellee law enforcement officials have taken the position that closed-shop agreements violate the Florida law and that they intend to enforce compliance with it by civil and criminal proceedings. The bill alleges that appellee Watson threatens to institute *quo warranto* proceedings against various companies with whom appellant unions have collective bargaining agreements containing closed-shop agreements, whereby it will be sought to cancel their corporate franchises unless the

---

others for periods of years up to five, some for the duration of the war, and others for periods about to expire.

The constitutions of some of the appellant unions require that all persons who desire to obtain or retain memberships in the unions shall work only with union members.

It is alleged that membership in appellant unions is open to all who can meet the requirements of skill prescribed for the work, who will submit to the discipline and by-laws of the unions, and who are of good character.

closed-shop provisions of the agreements are not observed. And appellants' motion for a restraining order alleges that *quo warranto* proceedings have been instituted for that purpose against a number of such companies, including three of the corporate appellees. The bill further alleges that appellee Watson, has threatened appellant unions and their officers and agents and the individual appellants with criminal prosecutions unless they give up the closed-shop agreements and refrain from renewing or entering into any such agreements. It alleges that he has ordered law enforcement agencies to institute such prosecutions immediately and that they are in process of being prepared.

Irreparable injury is alleged as follows: the threatened actions (a) will result in interminable litigation and multiplicity of prosecutions and legal proceedings; (b) will cause widespread disruption of employment relations and production; (c) will deprive appellants of the benefits of existing contracts; (d) will cause appellant unions to lose present and prospective members and imperil the security of the unions and their members; (e) will make it impossible for one of the appellant employers (R. J. Gould) to obtain sufficient skilled labor to conduct his business; and (f) will cause a cessation of collective bargaining relations between the appellant unions and employers and will result in the disorganization and disintegration of the unions.

The prayer was for a temporary and permanent injunction. A motion to dismiss was made which, though denying a showing of irreparable damage, raised no issue of fact, other than the question whether the amount involved in the controversy exceeds $3,000.

The district judge granted a temporary restraining order and pursuant to a prayer of the bill caused a three-judge court to be convened. § 266 Judicial Code, 28 U. S. C. § 380. The District Court concluded that it had juris-

diction of the controversy. But without determining whether there was equity in the bill (*Douglas* v. *Jeannette,* 319 U. S. 157, 162–163) or whether, pursuant to the rule of *Railroad Commission* v. *Pullman Co.,* 312 U. S. 496; *Chicago* v. *Fieldcrest Dairies,* 316 U. S. 168; *Spector Motor Co.* v. *McLaughlin,* 323 U. S. 101, the case should be held until an authoritative interpretation of the Florida law by the Florida courts could first be obtained, it proceeded at once to a consideration of the constitutional questions. It held that this Florida law did not violate the First or Fourteenth Amendment nor the Contract Clause of Article I, § 10 of the Federal Constitution. It held that it would be time to consider any conflict with the National Labor Relations Act if and when it arose, since that Act and the Florida law did not on their faces appear to be in conflict. It accordingly vacated the temporary restraining order and dismissed the complaint. 60 F. Supp. 1010. The case is here on appeal.

The initial question is whether the District Court had jurisdiction as a federal court to hear and decide the merits.[5] The federal district courts have jurisdiction of all suits of a civil nature, at common law or in equity where the matter in controversy exceeds, exclusive of interest and costs, $3,000 and "arises under the Constitution or laws of the United States . . ." Judicial Code § 24 (1), 28 U. S. C. § 41 (1). The allegations are that if the Florida law becomes effective there will be an immediate decrease in the membership of appellant unions and the dues collected by them will decrease far in excess of $3,000. Similar allegations are made to the effect that enforcement of the Florida law will result in such decimation of the membership of these unions, both local and national, as to cause reduction in income greatly in excess

---

[5] The case has not been argued on the merits here, as we limited the argument, when we noted probable jurisdiction, to jurisdictional questions.

of $3,000 jeopardizing the ability of the unions to function. Supporting affidavits were filed by a union official showing that appellant unions have about 500 contracts with Florida employers containing closed-shop agreements and affecting about 100,000 employees; and averring that if those contracts are nullified the loss in dues will greatly exceed $3,000, with resulting injury to the unions far in excess of that amount. The answer of one of the appellees, the sheriff of Hillsborough County, admitted that the matter in controversy exceeded $3,000. But, as we have said, the motion to dismiss filed by appellee Watson challenged the showing of the necessary jurisdictional amount. No counter affidavits, however, were filed. The District Court held it had jurisdiction under § 24.(1) of the Judicial Code. None of the parties challenges that finding here. The District Court also held that it had jurisdiction under § 24 (14) of the Judicial Code, 28 U. S. C. § 41 (14). That provision [6] gives the district courts of the United States jurisdiction over suits brought under the Civil Rights Act [7] without allegation of any jurisdictional amount. See *Hague* v. *C. I. O.*, 307 U. S. 496; *Douglas* v. *Jeannette, supra*, pp.

---

[6] It provides that the district courts shall have original jurisdiction "Of all suits at law or in equity authorized by law to be brought by any person to redress the deprivation, under color of any law, statute, ordinance, regulation, custom, or usage, of any State, of any right, privilege, or immunity, secured by the Constitution of the United States, or of any right secured by any law of the United States providing for equal rights of citizens of the United States, or of all persons within the jurisdiction of the United States."

[7] Sec. 1 of the Civil Rights Act of April 20, 1871, 17 Stat. 13, has been continued without substantial change as R. S. § 1979, 8 U. S. C. § 43, which reads as follows: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws; shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

161–162. We do not pass on the question whether the District Court had jurisdiction under § 24 (1) or § 24 (14) of the Judicial Code. . For it is the view of a majority of the Court that jurisdiction is found in § 24 (8) of the Judicial Code, 28 U. S. C. § 41 (8), which grants the federal district courts jurisdiction of all "suits and proceedings arising under any law regulating commerce." As we have said, the bill alleges a conflict between the Florida law and the National Labor Relations Act. The theory of the bill is that labor unions, certified as collective bargaining representatives of employees under that Act, are granted as a matter of federal law the right to use the closed-shop agreement [8] or, alternatively, that the right of collective bargaining granted by that Act includes the right to bargain collectively for a closed shop. Whether that claim is correct is a question which goes to the merits. It is, however, a substantial one. And since the right asserted is derived from or recognized by a federal law regulating commerce, a majority of the Court conclude that a suit to protect it against impairment by state action is a suit "arising under" a federal law "regulating commerce." Cf. *Mulford* v. *Smith,* 307 U. S. 38, 46; *Peyton* v. *Railway Express Agency,* 316 U. S. 350; *Parker* v. *Brown,* 317 U. S. 341, 349; *Tunstall* v. *Brotherhood of Firemen,* 323 U. S. 210, 213.

Another preliminary question is whether this is a proper case for a three-judge court. The statute provides that only a three-judge court may issue an interlocutory injunction suspending or restraining "the enforcement, oper-

---

[8] Sec. 8 (3) of that Act provides that "nothing in this Act . . . or in any other statute of the United States, shall preclude an employer from making an agreement with a labor organization (not established, maintained, or assisted by any action defined in this Act as an unfair labor practice) to require as a condition of employment membership therein, if such labor organization is the representative of the employees as provided in section 9 (a), in the appropriate collective bargaining unit covered by such agreement when made."

ation, or execution of any statute of a State by restraining the action of any officer of such State in the enforcement or execution of such statute . . ." § 266 of the Judicial Code, 28 U. S. C. § 380. The question is whether within the meaning of that section "statute" is restricted to legislative enactments or includes provisions of state constitutions as well. It is sometimes used to embrace all enactments, however adopted, to which a State gives the force of law. See *Stevens* v. *Griffith*, 111 U. S. 48, 50. In speaking of § 266 we recently said,

> "To bring this procedural device into play—to dislocate the normal operations of the system of lower federal courts and thereafter to come directly to this Court—requires a suit which seeks to interpose the Constitution against enforcement of a state policy, whether such policy is defined in a state constitution or in an ordinary statute or through the delegated legislation of an 'administrative board or commission.' The crux of the business is procedural protection against an improvident state-wide doom by a federal court of a state's legislative policy. This was the aim of Congress and this is the reconciling principle of the cases."

*Phillips* v. *United States*, 312 U. S. 246, 251. And see *Sterling* v. *Constantin*, 287 U. S. 378, 393. It would, as the court below stated, be somewhat incongruous to hold that a single judge, while prohibited from enjoining action under an act of the state legislature, would be free to act if the state constitution alone were involved. The policy underlying § 266 admits no distinction between state action to enforce a constitutional provision and state action to enforce an act of the legislature. There is no suggestion in the history of § 266 that Congress was willing to give the federal courts a freer hand when state constitutional provisions were involved. In our view the word "statute" in § 266 is a compendious summary of various enactments, by whatever method they may be adopted, to which a

State gives her sanction and is at least sufficiently inclusive to embrace constitutional provisions.

But even though a district court has authority to hear and decide the case on the merits, it should not invoke its powers unless those who seek its aid have a cause of action in equity. *Douglas* v. *Jeannette, supra,* pp. 162–163. The power of a court of equity to act is a discretionary óne. *Pennsylvania* v. *Williams,* 294 U. S. 176; 185. Where a federal court of equity is asked to interfere with the enforcement of state laws, it should do so only "to prevent irreparable injury which is clear and imminent . . ." *Douglas* v. *Jeannette, supra,* p. 163; *Spielman Motor Co.* v. *Dodge,* 295 U. S. 89; *Di Giovanni* v. *Camden Fire Ins. Assn.,* 296 U. S. 64; *Watson* v. *Buck,* 313 U. S. 387.

That is a strict test. But we think appellants satisfy it. We reach that conclusion on the basis of the allegations concerning the disruption of the collective bargaining processes and the injury to the unions and to the employers alike, if the closed-shop agreement is outlawed. As we have said, it is averred that there are about 500 contracts with Florida employers containing closed-shop agreements and affecting about 100,000 employees. Each contract is affected if the closed-shop agreement is held unlawful. Some of those contracts have expired and it is desired to renew them. Others are sought to be negotiated. Thus, in case of plaintiff, R. J. Gould, it is alleged that although he is anxious and willing to enter into such a contract, he is prevented from doing so by the threats cf appellees. As a result, it is alleged, he is and has been unable to secure sufficient skilled labor to conduct his business. It is alleged that there are numerous other situations of the same character. And it is shown that one employer, against whom *quo warranto* proceedings have been instituted, already has given notice of the suspension of the closed-shop agreement which it had with one of the appellant unions. Allegations are made that outlawry of closed-shop agree-

ments will cause a disruption in production and the decimation of union membership. It is fair to say on a reading of the bill that from the viewpoint both of the appellant unions and the appellant employers the disruption in collective bargaining which would be occasioned by holding closed-shop agreements illegal would be so serious as to make it futile to attempt to measure the loss in money damages. The allegations certainly state a cause of action in equity no less clear than that sustained in *Utah Fuel Co. v. National Bituminous Coal Comm'n*, 306 U. S. 56. The loss in bargaining position by the unions, the disruption of harmonious relationships between the union and the employers, the almost certain decrease in union membership—these are matters involving intangible values. Sec. 267 of the Judicial Code, 28 U. S. C. § 384, forbids the maintenance of suits in equity in the courts of the United States "in any case where a plain, adequate, and complete remedy may be had at law." But in view of the character of the intangible interests at stake, we cannot see how any remedy at law in the federal courts [9] would be adequate. A legal cause of action in the federal courts, which involves the point, may be slow in developing. Meanwhile, collective bargaining of the kind alleged to be permitted or secured by the National Labor Relations Act may be disastrously affected. We, of course, do not intimate an opinion on the question whether the alleged conflict exists. Whether the bill makes out a case to determine the issue is the only question now before us.

Moreover, the threat to enforce the Florida law is real and imminent. *Quo warranto* proceedings have been instituted against several of the corporations who are parties to the suit on the basis that they have closed-shop agreements with the unions. And appellee Watson has an-

---

[9] The inadequacy of the relief at law is measured by the character of the relief afforded by the federal not the state courts. *Di Giovanni v. Camden Fire Ins. Assn., supra*, p. 69.

nounced a policy to prosecute criminally all violators of the Florida law. The threat of multiplicity of prosecutions which is here alleged would not alone be sufficient to establish a cause of action in equity. *Matthews* v. *Rodgers,* 284 U. S. 521, 529–530; *Spielman Motor Co.* v. *Dodge, supra; Beal* v. *Missouri Pacific R. Co.,* 312 U. S. 45, 49–50; *Douglas* v. *Jeannette, supra,* pp. 163–165. But we mention the matter here to show that the threat of irreparable injury is real not fanciful, immediate not remote. The crux of the matter is the allegation that there is an imminent threat to an entire system of collective bargaining, a threat which, if carried through, will have such repercussions on the relationship between capital and labor as to cause irreparable damage. We conclude for that reason that the bill states a cause of action in equity.[10]

As we have said, the District Court passed on the merits of the controversy. In doing so at this stage of the litigation, we think it did not follow the proper course. The merits involve substantial constitutional issues concerning

[10] We do not pass on the question whether an interlocutory injunction should issue. That will be open on our remand of the cause. Sec. 266 provides in part: "if of opinion that irreparable loss or damage would result to the complainant unless a temporary restraining order is granted, any justice of the Supreme Court, or any circuit or district judge, may grant such temporary restraining order at any time before such hearing and determination of the application for an interlocutory injunction, but such temporary restraining order shall remain in force only until the hearing and determination of the application for an interlocutory injunction upon notice as aforesaid. The hearing upon such application for an interlocutory injunction shall be given precedence and shall be in every way expedited and be assigned for a hearing at the earliest practicable day after the expiration of the notice hereinbefore provided for. An appeal may be taken direct to the Supreme Court of the United States from the order granting or denying, after notice and hearing, an interlocutory injunction in such case." As to the findings necessary to support such relief, see *Lawrence* v. *St. Louis-San Francisco R. Co.,* 274 U. S. 588, 595–596; *Mayo* v. *Lakeland Highlands Canning Co.,* 309 U. S. 310.

the meaning of a new provision of the Florida constitution which, so far as we are advised, has never been construed by the Florida courts. Those courts have the final say as to its meaning. When authoritatively construed, it may or may not have the meaning or force which appellees now assume that it has. In absence of an authoritative interpretation, it is impossible to know with certainty what constitutional issues will finally emerge. What would now be written on the constitutional questions might therefore turn out to be an academic and needless dissertation.

There is, in the first place, some question whether this new provision of Florida's constitution is self-executing[11] or requires legislation for its enforcement.[12] The District Court itself took the view that it is not self-executing and noted that no enforcing legislation has been enacted. If, on the other hand, it be assumed, as Florida's Attorney General asserts, that this constitutional provision is self-executing, we do not know what sanctions Florida will afford for its enforcement. It provides that "The right of persons to work shall not be denied or abridged on account of membership or non-membership in any labor union, or labor organization . . ." It is asserted that this provision outlaws the closed-shop agreement and makes those who enter into one criminally liable,[13] or, in case of corpo-

---

[11] *Tampa* v. *Tampa Waterworks Co.*, 45 Fla. 600, 628–629, 34 So. 631; *Coleman* v. *State*, 118 Fla. 201, 159 So. 504; *Lummus* v. *Miami Beach Congregational Church*, 142 Fla. 657, 195 So. 607.

[12] See *Porter* v. *First National Bank*, 96 Fla. 740, 119 So. 130, 519; *State* v. *Alsop*, 120 Fla. 628, 163 So. 80; *State* v. *Jones*, 121 Fla. 216, 163 So. 590; *Draughon* v. *Heitman*, 124 Fla. 24, 168 So. 838; *State* v. *Emerson*, 126 Fla. 576, 171 So. 663; *American Bakeries Co.* v. *Haines City*, 131 Fla. 790, 180 So. 524; *Miami* v. *State*, 139 Fla. 598, 190 So. 774; *Bryan* v. *Miami*, 139 Fla. 650, 190 So. 772.

[13] Here, too, there is doubt whether the constitutional provision is self-executing. Appellee Watson apparently takes the position that those who enter into closed-shop agreements violate an old Florida

rations, subjects them to *quo warranto* proceedings.[14] So far as we know, however, it may not have that effect but do no more than give to an individual working man a cause of action in case the rights granted him are denied or abridged. Or as in the case of contracts in restraint of trade at common law, it may make closed-shop agreements unlawful only in the sense that courts will not enforce them.[15] The proviso itself raises questions of interpretation which when authoritatively settled may put the constitutional issues now sought to be raised in quite a different light or even eliminate some of them. The proviso states that "this clause shall not be construed to deny or abridge the right of employees by and through a labor organization or labor union to bargain collectively with their employer." The bill alleges that the right to bargain collectively granted by the National Labor Relations Act includes the right to a

statute (22 Fla. Stats. Ann. § 833.02) which provides: "If two or more persons shall agree, conspire, combine or confederate together for the purpose of preventing any person from procuring work in any firm or corporation, or to cause the discharge of any person from work in such firm or corporation; or if any person shall verbally or by written or printed communication, threaten any injury to life, property or business of any person for the purpose of procuring the discharge of any workman in any firm or corporation, or to prevent any person from procuring work in such firm or corporation, such persons so combining shall be deemed guilty of a misdemeanor, and upon conviction thereof, shall be punished by fine not exceeding five hundred dollars each, or by imprisonment not exceeding one year." But in *Jetton-Dekle Lumber Co. v. Mather*, 53 Fla. 969, 43 So. 590, the Supreme Court of Florida said that that statute "will not be applied to the case of union laborers who strike in order to secure all the labor for themselves."

[14] On *quo warranto* under Florida law see *State v. Tampa Water Works Co.*, 57 Fla. 533, 48 So. 639; *State v. Duval County*, 105 Fla. 174, 141 So. 173; *State v. Prevatt*, 110 Fla. 29, 148 So. 578; *State v. S. H. Kress & Co.*, 115 Fla. 189, 155 So. 823.

[15] See *Mogul Steamship Co. v. McGregor, Gow & Co.*, [1892] A. C. 25, 39; *Attorney General v. Adelaide Steamship Co.*, [1913] A. C. 781, 797.

closed-shop agreement.[16]  Conceivably the proviso may be construed to make this Florida law applicable only to enterprises not subject to the National Labor Relations Act.  Or the right to bargain collectively, recognized by the proviso, may be construed to mean the right which is granted by the National Labor Relations Act.

We give these illustrations to indicate how uncertain it is what constitutional issues will emerge once the Florida law receives an authoritative interpretation.  A decision today on the constitutionality of this Florida law would be based on a preliminary guess concerning its meaning, not on an authoritative construction of it.  We have already noted that this law may be so construed as to eliminate any conflict alleged to exist between it and the National Labor Relations Act.  If so, one of the constitutional questions presented by this case would disappear.  It is suggested, however, that the due process question is ripe for adjudication no matter how the Florida law is construed.  But if the law does no more than to grant an individual working man a cause of action in case he is denied employment unless he joins a union, or if it goes no further than to make closed-shop agreements unenforceable between the parties, no case or controversy raising the due process question would be presented for decision by the present bill.  For individual working men are not here asserting rights against unions or employers.  Nor does the present case involve litigation by unions to enforce closed-shop agreements against employers.  Furthermore, if, as the District Court thought, this Florida law is not self-executing, suits seeking to raise the due process question or any other constitutional question would be premature until Florida supplied sanctions for its enforcement.  A decision today on the merits might, therefore, amount to no more than an advisory opinion.  In *Railroad Commission*

---

[16] See note 8, *supra*.

v. *Pullman Co., supra; Chicago* v. *Fieldcrest Dairies, supra;* and *Spector Motor Co.* v. *McLaughlin, supra,* we held that under such circumstances the proper course was for the District Court to retain the bill until a definite determination of the local law questions could be made by the state courts. The doubts concerning the meaning of the Florida law indicate that such a procedure is peculiarly appropriate here. *Quo warranto* proceedings presently pending in the Florida courts may resolve the doubts. And other actions, such as suits for a declaratory judgment,[17] would seem to be available in the state courts.

It is said that since the continuance of litigation in the state courts is the only ground asserted for equitable relief, the entire purpose of the present suit will be defeated by retaining the bill pending determination of proceedings in the state courts. But the problem is not unique. It was implicit in *Railroad Commission* v. *Pullman Co., supra.* Moreover, the case for equitable relief rests not merely on the presence of a few cases in the state courts but also on the threat of wholesale prosecutions under a state law which the chief law enforcement official of the State maintains outlaws contracts for collective bargaining which labor and management have widely made. The resources of equity are not inadequate to deal with the problem so as to avoid unnecessary friction with state policies, while selective cases go forward in the state courts for an orderly and expeditious adjudication of the state law questions.

We reverse the judgment of the District Court and remand the cause to it with directions to retain the bill pending the determination of proceedings in the state courts in conformity with this opinion.

By consent of the parties the Cigar Manufacturers Association of Tampa was dismissed as a party defendant in

---

[17] See 5 Fla. Stats. Ann., § 62.09; *Sheldon* v. *Powell,* 99 Fla. 782, 128 So. 258.

the District Court. Accordingly, its motion to dismiss this appeal as against it is granted.

*So ordered.*

MR. JUSTICE JACKSON took no part in the consideration or decision of this case.

MR. CHIEF JUSTICE STONE, dissenting.

I think the suit should be dismissed for want of jurisdiction in equity.

A criminal prosecution or other litigation conducted in state courts by a state official, within the scope of his authority as such, may, it is true, cause apprehension on the part of those who are alleged to be lawbreakers. Such apprehensions and those of others may lead to changes in business practices to the injury of the alleged lawbreakers. But the conduct of such proceedings, in good faith and in conformity to law, is not actionable at law or in equity. Damage or loss to one's business or pocketbook, resulting from such proceedings, is but an incident to the necessary performance of a public function of state government. It is *damnum absque injuria. Spielman Motor Co.* v. *Dodge,* 295 U. S. 89, 95, and cases cited; *Beal* v. *Missouri Pacific R. Co.,* 312 U. S. 45, 49, 50, and cases cited. And even when the threatened injury is attributable to the state court proceeding to enforce a state statute which is asserted to be unconstitutional, it does not follow that equity will or should exercise its jurisdiction to restrain the prosecution.

Congress has adopted the policy of leaving to the courts of the states the trials for criminal violations of state law and of *quo warranto* proceedings against their own corporations. Federal courts of equity, in the exercise of their sound discretion, conform to that policy by refusing to interfere with proceedings in the state courts except where unusual circumstances clearly call for equitable relief. Hence it is well recognized that measures taken by state

officials to enforce state laws said to be unconstitutional may be enjoined by federal courts only to prevent "irreparable injury," and not merely to avoid that harm which is inseparable from the litigation of the mooted issues whether in a state or a federal court. *Ex parte Young,* 209 U. S. 123, 155, 156, 166; *Cavanaugh* v. *Looney,* 248 U. S. 453, 456; *Hygrade Provision Co.* v. *Sherman,* 266 U. S. 497, 500; *Fenner* v. *Boykin,* 271 U. S. 240, 243; *Massachusetts State Grange* v. *Benton,* 272 U. S. 525, 527; *Spielman Motor Co.* v. *Dodge, supra; Di Giovanni* v. *Camden Fire Ins. Assn.,* 296 U. S. 64; *Douglas* v. *Jeannette,* 319 U. S. 157, and cases cited. It is not enough to show that the injury to appellants is only that which is a normal incident of the state's assertion of its authority to enforce its laws. No person is immune from any good faith prosecution by the state for his unlawful acts. Neither the imminence of the prosecution nor the incidental injury which may flow from it is a ground for equity relief, since the constitutionality of the statute may be ascertained by the proceeding in the state courts with appellate review by this Court, as readily as by a suit in the federal courts. *Spielman Motor Co.* v. *Dodge, supra,* 95, and cases cited; *Beal* v. *Missouri Pacific R. Co., supra,* 49, and cases cited; *Watson* v. *Buck,* 313 U. S. 387; *Williams* v. *Miller,* 317 U. S. 599; *Douglas* v. *Jeannette, supra.*

Until the state questions here mooted are authoritatively settled by the state courts, and the constitutional questions which it is asserted they raise are settled by this Court, the threat to the closed shop will continue to embarrass labor unions and employers who have or seek to have closed-shop contracts. That embarrassment can be removed only by the process of adjudication which the state is constitutionally entitled to pursue, so long as the state and its officials proceed according to law. *Davis & Farnum Mfg. Co.* v. *Los Angeles,* 189 U. S. 207; *Fenner* v. *Boykin, supra; Spielman Motor Co.* v. *Dodge, supra,* 95.

Hence the arrest by federal courts of the processes of the civil or criminal law of the state, and the determination of questions of civil or criminal liability under state law, must be predicated not only upon a showing of unlawful or unconstitutional action on the part of the state, but upon some showing of a resulting immediate and irreparable injury which can be avoided or prevented only by the federal court's transferring the trial of the state questions from the state courts to itself. *Douglas* v. *Jeannette, supra,* 164.

There is no contention here that the state officials are acting outside their authority as such, that they are not acting in good faith, *Beal* v. *Missouri Pacific R. Co., supra,* 49; *Douglas* v. *Jeannette, supra,* 164, or that they threaten to make oppressive or malicious use of the legal processes of the state. Cf. *Gumbel* v. *Pitkin,* 124 U. S. 131. Nor is there any showing that the litigation of pending questions in the federal courts will be any less embarrassing or injurious to appellants than the litigation of suits already pending in the state courts with review by this Court. *Douglas* v. *Jeannette, supra,* 164.

There are no allegations which would take this case out of the rule that in general a federal court of equity will not exercise its power to stay litigation lawfully proceeding in state courts, or at all except where it is plain that by the exercise of its jurisdiction and its decision of the issue pending in the state courts it will avoid some immediate and irreparable injury to a plaintiff. The case is to be distinguished from those sustaining federal equity jurisdiction where the acts sought to be enjoined, which are asserted to be unlawful, do not involve any resort by an enforcement officer to the courts, where their lawfulness would, as here, be determined. *Utah Fuel Co.* v. *Coal Comm'n,* 306 U. S. 56; *Hague* v. *C. I. O.,* 307 U. S. 496.

It is not suggested that appellants will be forced to comply with the Act because the penalties attending its violation are cumulative or so great that appellants may not,

without risk of irreparable loss, continue their closed-shop contracts in order to test the constitutionality of the Act. Cf. *Ex parte Young, supra,* 144; *Missouri Pacific R. Co.* v. *Tucker,* 230 U. S. 340, 349; *Terrace* v. *Thompson,* 263 U. S. 197, 212, 214–216; *Beal* v. *Missouri Pacific R. Co., supra,* 51. Nor does the complaint allege that any of the persons, other than appellants, with whom appellants deal, employers or employees, have, because of the threats of appellees, broken or threatened to break their existing closed-shop agreements or have refused to enter into such agreements.\* Cf. *Kessler* v. *Eldred,* 206 U. S. 285. So far as the complaint shows such persons have refused to recognize the applicability or validity of the Florida amendment and are prepared to contest it. Thus there is no showing of threatened injury to applicants which would afford any basis for an injunction. True, it is alleged that appellant Gould, an employer, to his irreparable damage,

---

\*It is stated in the papers on appellants' motion in the district court for a restraining order, which now stands denied, that one employer, against whom *quo warranto* proceedings have been brought, has suspended the closed-shop agreement which it had with one of appellants' unions, and further, that appellees have filed *quo warranto* proceedings against several corporations having closed-shop agreements with appellants, that "there will not be any bona fide defense made in said suits, or most of them," and that the "prayers contained in the petitions" filed by appellees for a declaration "to the effect that the Constitutional Amendment here under attack is legal and valid and the closed shop provisions of the contracts invalidated" will be granted. No such averments appear in the complaint, the allegations of which alone supply the test of the equity jurisdiction. *Massachusetts State Grange* v. *Benton,* 272 U. S. 525, 528; *Williams* v. *Miller,* 317 U. S. 599. Further, assuming that statements in the motion papers may supply essential allegations lacking in the complaint, no reason appears why the employee appellants cannot test the validity of the Florida laws and constitution by suits against their employers who have broken their closed-shop contracts. There is no allegation on the motion that any employer has refused to enter into a closed-shop contract because of the threats of appellees.

has not been able to enter into closed-shop agreements although anxious to do so. But it is not said that any of the other appellants are, or have been, damaged by his failure to enter into such agreements, and Gould himself may test the law in Florida proceedings by refusing to comply with the alleged threats of appellees. It does not appear that his damage will be any different or greater if the litigation proceeds in the state instead of the federal courts, or that it is more than an unavoidable incident to litigation wherever conducted where the lawfulness of a business practice is drawn in question. There is no showing that appellants have sought or been denied the right to intervene in pending *quo warranto* proceedings, compare Florida Stats. § 63.09; *Switow* v. *Sher*, 136 Fla. 284, 186 So. 519; *Daugherty* v. *Latham*, 139 Fla. 477, 190 So. 742; *Riviera Club* v. *Belle Mead Develop. Corp.*, 141 Fla. 538, 194 So. 783; *Carr* v. *Carlisle*, 146 Fla. 201, 200 So. 529; *Tallentire* v. *Burkhart*, 150 Fla. 137, 7 So. 2d 326, although the Attorney General of the state has taken the position in the pending proceedings, as he does here, that he does not oppose the granting of applications for intervention by the appellant labor unions.

We cannot assume that the pending suits in *quo warranto*, with review by this Court of the federal questions involved, will not settle all pending legal questions, state and federal, as readily as a suit in the federal court, or that the parties will not abide by the result. The bill of complaint is not framed on the theory of a bill of peace. Cf. *Cleveland* v. *Cleveland City R. Co.*, 194 U. S. 517; *Boise Artesian Water Co.* v. *Boise City*, 213 U. S. 276; *Beal* v. *Missouri Pacific R. Co., supra,* 50. It does not allege that repeated, groundless or otherwise vexatious suits will be brought. *McDaniel* v. *Traylor*, 212 U. S. 428; *Di Giovanni* v. *Camden Fire Ins. Assn., supra,* 68. It does not seek to join all parties threatened by the prosecution of suits or show such singleness of issue of decisive questions as will

permit the adjudication of all in a single suit. *Francis* v. *Flinn,* 118 U. S. 385; *Scott* v. *Donald,* 165 U. S. 107, 115; *Hale* v. *Allinson,* 188 U. S. 56, 77 *et seq.; St. Louis, I. M. & S. R. Co.* v. *McKnight,* 244 U. S. 368, 375; *Kelley* v. *Gill,* 245 U. S. 116, 120; *Matthews* v. *Rodgers,* 284 U. S. 521, 530.

And, finally, the determination of the constitutional questions, which is the only purpose of the suit, must turn on the authoritative decision of the numerous and novel state questions presented. Cf. *Hygrade Provision Co.* v. *Sherman, supra; Cline* v. *Frink Dairy Co.,* 274 U. S. 445; *Spielman Motor Co.* v. *Dodge, supra; Beal* v. *Missouri Pacific R. Co., supra,* 50. The presence of such state questions in the suit is itself a sufficient ground for our declining to decide the constitutional questions in advance of authoritative determination of the state questions by the state courts. Cf. *Alabama State Federation* v. *McAdory,* 325 U. S. 450; *C. I. O.* v. *McAdory,* 325 U. S. 472; see *Spector Motor Co.* v. *McLaughlin,* 323 U. S. 101.

Further, since the whole aim of appellants' suit is to enjoin the appellees from proceeding in the state courts, this Court's direction to the district court to retain the bill pending the determination of proceedings in the state courts defeats the entire purpose of the present suit and permits the continuance of state litigation which is the only ground asserted for equitable relief. If appellees should at any time make oppressive use of legal processes of the state, bring repeated, groundless suits, or otherwise threaten irreparable damage to appellants, the federal courts are open to them upon their making allegations sufficient to justify intervention by equity. But the mere chance that such irreparable damage may be threatened at some indefinite time in the future, although it is not now, is no reason for the district court to retain the bill which wholly fails to show any ground for equitable relief. There being no showing of damage to the appellants, actual or

potential, save that which is a necessary incident to the state's exercise of its constitutional power to enforce its constitution and laws, which this Court now permits, it is our plain duty to dismiss the suit.

Mr. Justice Murphy, dissenting in part.

I dissent from that part of the Court's opinion that holds that the District Court erred in passing upon the merits of the controversy presented by this case.

It may well be that there are serious questions as to how and against whom Florida's new constitutional provision will be enforced. And the provision may be construed so as not to conflict with the National Labor Relations Act. Such matters must wait for authoritative action by the Florida courts. But there are federal constitutional issues inherent on the face of this provision that do not depend upon any interpretation or application made by Florida courts. Those issues were raised and decided in the court below. And they should be given appropriate attention by this Court.

The Court today holds that there is a very real and imminent threat to the entire system of collective bargaining in Florida growing out of the current attempts to enforce the Florida law. It should not be and is not difficult to discover the federal constitutional issues that are involved in that threat. True, we cannot say what constitutional issues may arise out of the law as subsequently interpreted and applied by the Florida courts. But we can say what issues are apparent on the face of the law itself, the law that has given rise to the grave threat to collective bargaining in Florida. Either the provision does or does not violate due process as guaranteed in the Fourteenth Amendment; either it falls outside or inside the permissible scope of the police power of the state; either it is in accord or in conflict on its face with the National Labor Relations Act. Those are the issues the parties have raised and the court

below has decided. Those are the issues that are obviously involved in relation to the Florida law. I do not believe that a federal court is incapable of recognizing or deciding those issues. Nor do I believe that it should close its eyes to those issues merely because they are difficult or highly controversial. In short, appellants' claims are ripe for adjudication.

Moreover, the Court remands the case to the District Court with directions to retain the case until the Florida courts interpret the provision in the Florida constitution. The efficacy of this disposition of the case is less real than apparent. It affords little if any protection to the appellants so far as the issues now in dispute are concerned. They are left unprotected against the very threat which this Court states is real and imminent. And should the Florida courts ultimately decide these issues adversely to appellants' contentions they will have no effective recourse in the District Court, which already has expressed itself fully and adversely relative to those contentions.

I dissent, therefore, from a procedure depriving appellants of a full hearing and a determination of the issues they have properly raised in the District Court and denying them the right to secure the protection the federal equitable power might give them.