Leo **FRISCHMAN**, Plaintiff,

v.

**Harry S. DURAND, individually and as Secretary of Arthur-Hardgrove Company, Inc., et al., Defendants.**

**No. 72 Civ. 3745.**

United States District Court,
S. D. New York.

Nov. 2, 1972.

Leo Frischman, plaintiff, pro se.

Nass & Nass, New York City, for defendants Harry S. Durand, Arthur-

Hardgrove Co., Inc., and Bronx Park East Housing Co., Inc.; by Jacob Nass, Sidney Rabekoff, New York City, of counsel.

Louis J. Lefkowitz, Atty. Gen., of the State of New York, New York City, for defendant Urstadt; by A. Seth Greenwald, New York City, of counsel.

Whitney North Seymour, Jr., U. S. Atty., New York City, for defendant Gray; by Joseph Marro, New York City, of counsel.

GURFEIN, District Judge.

In this action the plaintiff, pro se, a tenant in a middle income housing project, supervised and regulated by the defendant Urstadt, Commissioner of the New York State Division of Housing and Urban Renewal, seeks to enjoin Urstadt and his landlord from instituting legal proceedings designed to collect a certain surcharge on his rent. He also seeks a declaratory judgment declaring that Chapter 778 of the Laws of New York, 1971 N.Y. Private Housing Finance Law § 31(3), (4) [PHFL] (McKinney 1972), McKinney's Consol.Laws, c. 44B is un-constitutional and in violation of the fourteenth amendment to the United States Constitution.[1] He also seeks reversal of the adverse decision of the United States District Director of Internal Revenue that the rental surcharge did not violate Executive Order No. 11615, 36 F.R. 15727. He also asks damages against the landlord.

The plaintiff asserts federal jurisdiction under 28 U.S.C. § 1343(3) and 42 U.S.C. § 1983, and the right to a declaratory judgment under 28 U.S.C. § 2201. A hearing before a three-judge court is prayed for pursuant to 28 U.S.C. § 2281. The plaintiff now moves for a temporary injunction, pending the convening of a three-judge court, against the landlord and the Commissioner to prevent them from terminating the plaintiff's tenancy or commencing an eviction proceeding against him. The Attorney General of the State, on behalf of the Commissioner, moves to dismiss the complaint under Fed.R.Civ.P. 12(b)(1) and (6) upon the grounds that the Court lacks subject matter jurisdiction and that it fails to state a claim upon which relief may be granted.

---

1. N.Y. Private Housing Finance Law § 31 (3), (4) (McKinney's) reads as follows:

3. In the event that the income of a person or family in occupancy should increase and exceed the maximum prescribed by law for admission or for continued occupancy, based on the latest existing rent, by more than twenty-five per centum, such person or family shall be subject to removal from the dwelling, non-housekeeping, aged care accommodations or non-housekeeping accommodations for handicapped persons provided, however, that such person or family may be permitted to remain in occupancy until such income exceeds the maximum prescribed by law by more than fifty per centum, if the company, with the approval of the commissioner or the supervising agency, shall determine that removal would cause hardship to such person or family. Any person or family in occupancy whose income exceeds the maximum prescribed by law shall pay a rental surcharge in accordance with a schedule of surcharges to be promulgated by the company with the approval of the commissioner or the supervising agency, as the case may be, provided, however, such rental surcharge shall in no event exceed fifty per centum of the existing rent.

4. Fifty per cent of rental surcharges collected pursuant to this section shall be paid by the company to the municipality which has granted tax exemption pursuant to section thirty-three of this article as a credit against the grant of tax exemption, the value of such tax exemption and of such credit to be determined on an individual dwelling, non-housekeeping, aged care accommodation or non-housekeeping accommodations for handicapped persons unit basis. In the event that such tax exemption has not been granted, or in the event that a sum equal to the total of all accrued taxes as to individual dwelling, non-housekeeping, aged care accommodation or non-housekeeping accommodations for handicapped persons units where such tax exemption was granted have been paid to the municipality, the excess if any, of surcharges shall be applied to the expenses of operation and management as approved by the commissioner or the supervising agency.

The plaintiff is a tenant of Bronx Park East Housing Company, Inc. which operates a middle income profit housing project under the so-called Mitchell-Lama Act (Private Housing Finance Law). Such projects under State law have strict income eligibility limitations. The plaintiff has been a tenant for a number of years and his income ($21,-100) now exceeds the maximum allowable at the project. The statute provides for continued occupancy if the tenant is willing to pay a surcharge provided the company, with the approval of the Commissioner, determines that removal would cause hardship on the tenant. Previously the maximum surcharge was 25% over the scheduled rental based on verified income (N.Y. Private Housing Finance Law § 31(3) (McKinney's)). In 1971, the Legislature increased the maximum surcharge to 50% (N.Y. Private Housing Finance Law § 31(3) (McKinney's)) and allowed one-half of that to be retained by the housing company as compensation for increased operating costs resulting from inflation (N.Y. Private Housing Finance Law § 31(4) (McKinney's)).

To put the plaintiff's case succinctly: He contends that the 1971 amendment to the statute which permits half of the rental surcharge to go to the landlord deprives him of the "equal protection of the laws" (fourteenth amendment), thereby violating 42 U.S.C. §§ 1983, 1985. The argument runs that simply because he has more income than some of the other tenants he should not be made to pay more rent. Indeed, he does not object to paying that part of the rental surcharge which goes to the City for taxes, but he does object to the part of the rental surcharge which, by fiat of the Legislature, goes to the landlord for operating expenses. While he does not assert the due process part of the fourteenth amendment, he nonetheless seems to argue that money is being taken out of his pocket and put into the pocket of another private person, the landlord, and that this is unconstitutional.

I must address myself to three questions: (1) whether there is a showing of irreparable injury; (2) whether to convene a three-judge court; and (3) whether the complaint can and should be dismissed without convening a three-judge court.

■■ To support the granting of a preliminary injunction the Court would have to find that a failure to grant the injunction might cause irreparable injury to the plaintiff "which is clear and imminent." See American Federation of Labor v. Watson, 327 U.S. 582, 593, 66 S.Ct. 761, 90 L.Ed. 873 (1946). Here the disputed surcharge amounts to fifty dollars per month. The plaintiff makes more than $21,000 a year. The landlord and the property are not running away. If the plaintiff should succeed ultimately in establishing that the rental surcharge was invalid he would get his money back with interest. There seems to be no reason for interim relief. Nor is he put to a cruel choice, for there is no suggestion that if his rights were determined adversely now he could get another apartment at a cheaper rent.

The request for a declaratory judgment declaring the statute unconstitutional could for the same reason be left for determination at trial.

It has been suggested elsewhere that the statement of the Supreme Court in Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 715, 82 S.Ct. 1294, 1296, 8 L.Ed.2d 794 (1962) that the District Judge's inquiry on whether to ask for the convening of a three-judge court "is appropriately limited to determining whether the constitutional question raised is substantial, whether the complaint at least formally alleges a basis for equitable relief, and whether the case presented otherwise comes within the requirements of the three-judge statute" (emphasis added).

■■ The complaint in this case contains the words "irreparable injury," but I do not believe that is all the Supreme Court intended to require in Idlewild Bon Voyage Liquor Corp., supra. The decision to be made by the single judge is judicial not ministerial. The facts al-

leged in support of the bare allegation must be considered. If they do not make a convincing case that injury would be irreparable, the single judge has the discretion to find that there is no ground for equitable relief. I so find. As the Court of Appeals for the Third Circuit has held, it is the District Court Judge's duty "to examine the complaint for substantive allegations which would support a claim for injunctive relief, and not to look merely at the prayer for relief and the conclusive allegation of irreparable injury." Majuri v. United States, 431 F.2d 469, 473 (1970).

■ In addition, the three-judge court need not be convened if the injunctive relief sought, while in form directed against Commissioner Urstadt, is in practical terms directed only against the landlord. The Housing Commissioner does not collect the rent; the landlord does. The Housing Commissioner is not a party to eviction proceedings; the landlord is. Thus, while the statute assailed meets the first test for convening a three-judge court, that it is state-wide in application, it may be that the second test is not met: the relief sought must be directed against a State officer. Wilentz v. Sovereign Camp, W. O. W., 306 U.S. 573, 579–580, 59 S.Ct. 709, 83 L.Ed. 994 (1939). See Hall v. Garson, 430 F.2d 430, 442 (5 Cir. 1970). In that case, as here, "the injunction is sought against the landlord. And, although he may be performing state functions for purpose of any state action requirement, this does not mean that he becomes a state officer for purposes of § 2281—'an enactment technical in the strict sense of the word and to be applied as such.' Phillips v. United States (1941) 312 U.S. 246, 251, 61 S.Ct. 480, 483, 85 L.Ed. 800, 805; Mitchell v. Donovan (1970) 398 U.S. 427, 90 S.Ct. 1763, 26 L.Ed.2d 378."

The statute, 28 U.S.C. § 2281, as did its predecessor, Judicial Code § 266, limits the jurisdiction to "restraining the *action* of any officer of such State in the enforcement or execution of such statute" (emphasis added).

Since there is, in my judgment, no substantial constitutional question, however, Ex parte Poresky, 290 U.S. 30, 32, 54 S. Ct. 3, 78 L.Ed. 152 (1933), there is no need to pass on whether a landlord acting under a State statute may be a state officer for Section 2281 purposes as well as for Section 1983 purposes. *Cf.* in the civil rights area, Adickes v. S. H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L. Ed.2d 142 (1970).

■ It is sufficient to determine that no substantial constitutional question exists. The policy of the State is to alleviate the shortage of safe and sanitary housing for families of "low income" N.Y. Private Housing Finance Law § 11 (McKinney's). "Persons of low income" and "families of low income" are defined generally in Section 12(10) as families "who cannot afford to pay enough to cause private enterprise in their municipality to build a sufficient supply of adequate, safe and sanitary dwellings . . . ." A person like the plaintiff who concededly makes over $20,000 a year is not such a person or family. Since the purpose of the law was to encourage private housing corporations for profit to build for families of low income, the plaintiff is not within the purview of the statute. He must, accordingly, be removed from the housing project unless hardship would result. In that case, the Legislature has provided that he may remain in the project if he pays the rental surcharge. In other words, he is permitted to stay even though he is not eligible to do so, on condition that he help carry the load for the "low income" people. It is, of course, his privilege to leave if he does not wish to comply with this condition. He is not carrying the load for the landlord, as he believes, since the alternative for a landlord whose operating expenses have risen is to ask for permission to impose rent increases upon all the tenants. Using the rental surcharge to pay part of the operating expenses of the landlord is simply a method of taking part of that burden from the lower income tenants.

A classification based on income in these circumstances is so clearly reasonable as to be beyond serious question, particularly when no one is forcing the plaintiff to remain in his apartment. In saying this I do not mean to suggest a reversion to the old rule of constitutional law that a privilege is not ground for relief since it may be withdrawn. It is not the circumstance that living in his apartment is a *privilege* which keeps the plaintiff from being a proper subject for relief. Granted that a privilege as well as a right may support a constitutional attack, Sherbert v. Verner, 374 U.S. 398, 404, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963), Goldberg v. Kelly, 397 U.S. 254, 262, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), there is simply no basis here for claiming a denial of equal protection of the law. The State has created financial aid to housing corporations in certain areas for certain families of low income. The State has the right to determine rentals. There is no claim of unequal treatment among the low income group itself, and disparate treatment of others is clearly within the purpose of the Private Housing Finance Law. Keeping the rent level of the low income group down is a salutary purpose, and the means toward the end is quite logically the requirement that the richer tenant share with the State what is, in effect, a subsidy for low income housing. The state of facts here reasonably justifies the rental surcharge. See McGowan v. Maryland, 366 U.S. 420, 426, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961). As the Supreme Court has said:

"A statutory classification in the area of social welfare is consistent with . . . Equal Protection . . . if it is 'rationally based and free from invidious discrimination.' Dandridge v. Williams, 397 U.S. 471, 487, 90 S.Ct. 1153, 1162, 25 L.Ed.2d 491 [1970]." Richardson v. Belcher, 404 U.S. 78, 81, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971).

For the reasons stated there is no substantial constitutional question sufficient to require the convening of a three-judge court.

The plaintiff also contends that the rental surcharge should be declared invalid because it is in violation of Executive Order No. 11615, 36 F.R. 15727, August 15, 1971, freezing rents as of that date. Although the District Director appears to have overruled the plaintiff's contention on the merits it does not appear as if the apartment occupied by the plaintiff is under federal price control. There is a specific exemption for rent control housing. That means a residence for which the monthly rent is established or controlled "[b]y (in whole or in part) the Federal Government, a State or local government, . . . which has provided financial assistance for the construction or purchase of, but which does not own, the residence." Regulation 301.106(b)(2), promulgated under the Economic Stabilization Act of 1970, as amended, Public Law 92–210, 85 Stat. 743 (1971).

The Temporary Emergency Court of Appeals of the United States has just decided that the City of New York "controls" the rents in a low income housing project owned and operated by the New York City Housing Authority, a public corporation. Rykus v. New York City Housing Authority, 468 F.2d 215 (Em. App. 1972).

Under the reasoning of that case since the State clearly controls the rents under the Private Housing Finance Law, these premises appear to be exempt from federal price control.

The motion for a preliminary injunction is denied and the Chief Judge of the Court of Appeals will not be asked to convene a three-judge court.

The complaint is dismissed for lack of federal subject matter jurisdiction. See Heaney v. Allen, 425 F.2d 869 (2 Cir. 1970). The Court has also stated its view, in the event of appeal, that no claim for relief is stated, in any event.