Charles F. **KIRKLEY** and Patricia Atherton

v.

**STATE OF MARYLAND,** Represented by Marvin **MANDEL,** Governor of Maryland, and Francis B. Burch, Attorney General for Maryland.

Civ. No. Y–74–748.

United States District Court,
D. Maryland.

Aug. 26, 1974.

Barbara A. Gold, Kenneth L. Lasson, Baltimore, Md., for plaintiffs.

George A. Nilson, Baltimore, Md., for defendants.

## MEMORANDUM OPINION AND ORDER

JOSEPH H. YOUNG, District Judge.

Article III, Section 11 of the Constitution of the State of Maryland provides that:

No Minister or Preacher of the Gospel, or of any religious creed, or de-nomination, and no person holding any civil office of profit, or trust, under this State, except Justices of the Peace, shall be eligible as Senator or Delegate.

In this action plaintiffs seek a declaratory judgment that Section 11 is unconstitutional insofar as it applies to clergymen. Plaintiff Charles Kirkley is a candidate for election to the Maryland House of Delegates and Minister of the St. Paul's United Methodist Church in Kensington, Maryland. The other plaintiff, Patricia Atherton, is a registered voter in the legislative district from which plaintiff Kirkley seeks election to the House of Delegates.

Since the complaint herein, as originally filed, requested injunctive as well as declaratory relief, a three-judge court, as required by 28 U.S.C. § 2281, was designated by Chief Judge Haynsworth of the United States Court of Appeals for the Fourth Circuit.[1] Subsequently, the complaint was amended to delete the request for injunctive relief and, there being no further need for the three-judge court, it was dissolved.

No question has been raised by the defendants as to the plaintiffs' standing to sue, and it appears quite clear that each has "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues * * *," Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed. 2d 663 (1962), and that, as to each, "there is a logical nexus between the status asserted and the claim sought to be adjudicated." Flast v. Cohen, 392 U.S. 83, 102, 88 S.Ct. 1942, 1953, 20 L.Ed. 2d 947 (1968). Plaintiff Kirkley, although allowed to file as a candidate, has experienced substantial difficulties in his campaign to date as a result of his status as a minister. It seems

---

1. Although 28 U.S.C. § 2281 by its terms applies only to state *statutes*, it is well established that it is also applicable where a state constitution is challenged. Sincock v. Duffy, 215 F.Supp. 169 (D.C.Del.1963), aff'd sub nom. Roman v. Sincock, 377 U.S. 695, 84 S. Ct. 1449, 12 L.Ed.2d 620 (1964); American Federation of Labor v. Watson, 327 U.S. 582, 593, 66 S.Ct. 761, 90 L.Ed. 873 (1946).

unquestionable that his ability to attract the votes and support of his fellow citizens is seriously impaired by the prospect of his candidacy ultimately being declared illegal. Plaintiff Atherton has expressed her intention to vote for plaintiff Kirkley, and is thus directly concerned with the validity of plaintiff Kirkley's candidacy. The right to vote is a fundamental right protected by the Constitution of the United States, Dunn v. Blumstein, 405 U.S. 330, 336, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972). The injury which could result to plaintiff Atherton is manifest; if plaintiff Kirkley's candidacy is ruled illegal after the election, she will have been, in effect, denied her vote.

■ One unusual factor to consider in regard to the justiciability of this case is that the defendants have, for all intents and purposes, admitted the unconstitutionality of the provision here challenged. Concern, therefore, arises as to whether there here exists a case or controversy as required by Article III of the Constitution. *See,* Moore v. Board of Education, 402 U.S. 47, 91 S.Ct. 1292, 28 L.Ed.2d 590 (1971).

Although plaintiff Kirkley was allowed to file as a candidate despite the restriction in the Maryland Constitution, it is impossible to say what could happen if he were elected. His seating in the House of Delegates could be challenged by his opponent or others as a violation of the Maryland Constitution. The present Attorney General has issued an opinion expressing the view that the provision in question is unconstitutional. However, as the opinion points out, the Attorney General does not have the authority to invalidate the provision. Moreover, it is possible that a subsequent Attorney General might disagree with this evaluation.

These are not merely possibilities which may not take place. *Cf.* Roe v. Wade, 410 U.S. 113, 128, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). Rather, they are

possibilities which, because of their very existence, result in a very real and immediate injury. By his candidacy for office, plaintiff Kirkley is already in violation of the constitutional provision. His concern with a possible invocation of that provision is not "chimerical," Poe v. Ulman, 367 U.S. 497, 508, 81 S. Ct. 1752, 6 L.Ed.2d 989 (1961). *Cf.* Doe v. Bolton, 410 U.S. 179, 188, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973). This Court is satisfied that the case presents "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and realty to warrant the issuance of a declaratory judgment."

■■ Plaintiffs allege that Section 11 of Article III is unconstitutional under both the Free Exercise clause of the First Amendment [2] and the Due Process clause of the Fourteenth Amendment. Considering first the Free Exercise argument, there is some controversy as to whether or not the right to hold political office is a constitutionally protected right, and, if it is, as to the exact nature of that right. Most of the cases which have considered the question have done so in the context of an alleged denial of equal protection. *Compare, e. g.,* Mancuso v. Taft, 476 F.2d 187 (1st Cir. 1973); Duncantell v. City of Houston, Texas, 333 F.Supp. 973 (S.D.Tex.1971); Thomas v. Mims, 317 F.Supp. 179 (S.D. Ala.1970), *with* Snowden v. Hughes, 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1944); Blassman v. Markworth, 359 F.Supp. 1 (N.D.Ill.1973) (three-judge court); Heiser v. Rhodes, 305 F.Supp. 269 (S.D.Ohio 1969) (three-judge court); Stack v. Adams, 315 F.Supp. 1295, 1297 (N.D.Fla.1970) (three-judge court). *Cf.* Bullock v. Carter, 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972). However, there is no doubt that a "State may not deny to some the privilege of holding public office that it extends to others on the basis of distinctions that violate federal constitutional guarantees." Turner v. Fouche, 396 U.S. 346,

---

**2.** The First Amendment is applicable to the States through the Fourteenth Amendment.

Cantwell v. Connecticut, 310 U.S. 296, 303, 60 S.Ct. 900, 84 L.Ed. 1213 (1940).

362–363, 90 S.Ct. 532, 541, 24 L.Ed.2d 567 (1970); Torcaso v. Watkins, 367 U. S. 488, 495–496, 81 S.Ct. 1680, 6 L.Ed.2d 982 (1961). *Cf.* Wieman v. Updegraff, 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216 (1952). Nor can the opportunity to seek public office be conditioned upon the unreasonable surrender of constitutional rights. *Cf.* Keyishian v. Board of Regents, 385 U.S. 589, 605–606, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967). "It is too late in the day to doubt that the liberties of religion and expression may be infringed by the denial of or placing of conditions upon a benefit or privilege." Sherbert v. Verner, 374 U.S. 398, 404, 83 S.Ct. 1790, 1795, 10 L.Ed.2d 965 (1963).

■ In School District of Abington Township, Pennsylvania v. Schempp, 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963), the Supreme Court described the scope of the Free Exercise clause as withdrawing

> from legislative power, state and federal, the exertion of any restraint on the free exercise of religion. Its purpose is to secure religious liberty in the individual by prohibiting any invasions thereof by a civil authority. Hence it is necessary in a free exercise case for one to show the coercive effect of the enactment as it operates against him in the practice of his religion.

374 U.S. at 222–223, 83 S.Ct. at 1572. For the requirement to stand where, as here, there is an allegation that a requirement of some type violates the Free Exercise clause "it must appear either that the State does not deny the free exercise of religious belief by its requirement, or that there is a state interest of sufficient magnitude to override the interest claiming protection under the Free Exercise Clause." Wisconsin v. Yoder, 406 U.S. 205, 214, 92 S.Ct. 1526, 1532, 32 L.Ed.2d 15 (1972); Sherbert v. Verner, *supra,* 374 U.S. at 403, 83 S.Ct. 1790.

■ The restriction upon the free exercise of religion imposed by Section 11 means that by virtue of ordination as a minister one loses his right to hold public office in the state legislature. Under this provision, plaintiff Kirkley must abandon either his ministry or his hope to serve the people of his community as a State Delegate. Such a requirement clearly constitutes "governmental interference with religion," Walz v. Tax Commission, 397 U.S. 664, 669, 90 S.Ct. 1409, 25 L.Ed.2d 697 (1970), and places a burden upon the free exercise of religion. *Cf.* Sherbert v. Verner, *supra,* 374 U.S. at 404, 83 S.Ct. 1790.

Perhaps the two most relevant Supreme Court precedents are Torcaso v. Watkins, *supra,* and Sherbert v. Verner, *supra.* *Torcaso* invalidated the Maryland requirement that one assuming a public office must take an oath affirming his belief in God. Responding to the argument that there was no element of coercion in the requirement because no one was compelled to hold office, the Court stated:

> The fact, however, that a person is not compelled to hold public office cannot possibly be an excuse for barring him from office by state-imposed criteria forbidden by the Constitution. * * * This Maryland religious test for public office unconstitutionally invades the appellant's freedom of belief and religion * * *."

367 U.S. at 496, 81 S.Ct. at 1684. In *Sherbert* the appellant was a Seventh-Day Adventist who had been denied unemployment compensation benefits because she had refused employment which would have required her to work on Saturday. Although recognizing that "the Court has rejected challenges under the Free Exercise Clause to governmental regulation of certain overt acts prompted by religious beliefs or principles, * * *," the Court noted that "[t]he conduct or actions so regulated have invariably posed some substantial threat to public safety, peace or order (citations omitted)," 374 U.S. at 403, 83 S. Ct. at 1793. Finding that the ruling imposed a burden on the appellant's free exercise of her religion, and being unable to perceive any "compelling state

interest," 374 U.S. at 406, 83 S.Ct. 1790, to justify this burden the Court found the disqualification of the appellant for unemployment benefits to be unconstitutional.

As in *Torcaso,* plaintiff Kirkley is not compelled to hold public office, and as in *Sherbert* the burden on plaintiff Kirkley's freedom of religion is indirect, 374 U.S. 403–404, 83 S.Ct. 1790, but the burden is nonetheless real and, unless it can be justified, must be removed.

In Wisconsin v. Yoder, *supra,* discussing the type of state interest which would warrant the imposition of a burden upon the free exercise of religion, the Supreme Court stated:

> The essence of all that has been said and written on the subject is that only those interests of the highest order and those not otherwise served can overbalance legitimate claims to the free exercise of religion.

406 U.S. at 215, 92 S.Ct. at 1533. *See* Sherbert v. Verner, *supra,* 374 U.S. at 406, 83 S.Ct. 1790. The State of Maryland, due to the position it has taken in regard to this litigation, has made no attempt to demonstrate any basis for the exclusion of ministers as state legislators.

The Attorney General in his opinion on the constitutionality of Section 11, 56 Opinions of the Attorney General 25–31, discusses the history of the provision[3] and concludes that in part its inclusion in the Constitution was due to "a 19th Century view of the ministry not particularly complimentary to that calling and not prevalent today." 56 Opinions of the Attorney General at 27. Another reason, no doubt, was to insure the separation of Church and State. Yet today there are members of the clergy sitting in the Congress of the United States and, in all probability, in the legislatures of other states. Surely, this exclusion of ministers from elected office, if it were necessary to insure the proper separation between Church and State, would extend also to federal office. This Court can discern no interest of the State of Maryland which would justify the burden upon the free exercise of religion imposed by Article III, Section 11 of the Maryland Constitution. Accordingly, it must be declared unconstitutional as violative of the Free Exercise clause of the First Amendment as applied to the States through the Fourteenth Amendment insofar as it restricts the eligibility for office of any "minister or Preacher of the Gospel, or of any religious creed, or denomination * * *." The Court has not been presented with and has not considered the question of the constitutionality of the section as it applies to individuals "holding any civil office of profit, or trust, under this State * * *."

In light of this finding, it is unnecessary for the Court to consider the constitutionality of the provision under the Due Process clause.

For the foregoing reasons it is this 26th day of August by the United States District Court for the District of Maryland, Ordered

That Section 11, Article III of the Constitution of the State of Maryland be, and the same is, hereby declared unconstitutional as violative of the First and Fourteenth Amendments of the Constitution of the United States.

---

3. Apparently Section 11 of Article III was first inserted into the Maryland Constitution in 1776, removed in 1864 and then reinserted in 1867. In the proposed Constitution of 1967, this section was deleted. 56 Opinions of the Attorney General at 26.