**EAST COAST LUMBER TERMINAL, Inc. v. TOWN OF BABYLON.**

Civ. No. 9125.

United States District Court
E. D. New York.
Jan. 4, 1949.

Jacob W. Friedman, of New York City (Daniel A. Shirk and Jacob W. Friedman, both of New York City, of counsel), for plaintiff.

Oscar Murov, of Lindenhurst, N. Y. (Lindsay R. Henry, of Riverhead, N. Y., and Joseph Wackerman, of Brooklyn, N. Y., of counsel), for defendant.

GALSTON, District Judge.

This non-jury action involves the challenged constitutionality of an ordinance enacted by the defendant on December 6, 1943 for the licensing and regulation of excavations of sand, gravel and clay pits and quarries.

The plaintiff is the owner of approximately eighty acres fronting on Broad Hollow Road and located within the township of Babylon, and since February 1943 has been engaged, among other activities, in excavating, processing and selling sand and gravel. Prior to February 1943, and since about August 1941, Virgil M. Price, the president of the plaintiff company, had through various unincorporated companies utilized part of the area for the same purposes.

It is the complaint of the plaintiff that the defendant has unlawfully subjected the plaintiff to the provisions of the ordinance of December 6, 1943 by impeding and at-

tempting to destroy plaintiff's operations, investment and property rights.

The defendant caused to be served upon the plaintiff a summons requiring the plaintiff to appear before a justice of the peace of the Town of Babylon on June 1, 1948, and charged the plaintiff, its president and two of its workmen who were engaged in the performance of work on the aforesaid premises with violations of the ordinance. Prior to a determination by the justice of the peace in those proceedings, this suit was instituted on June 5, 1948. It is alleged herein that the ordinance is unreasonable and tends to deprive the plaintiff of property without due process of law, is inconsistent with public policy, and is void and unconstitutional within the meaning of the Fourteenth Amendment to the Constitution. Plaintiff alleges that it has no adequate remedy at law, and by this action seeks to have the defendant enjoined from enforcing the ordinance, from otherwise unlawfully interfering with its operations, and asks to have the ordinance adjudged unconstitutional.

At the trial, after plaintiff's prima facie case was completed, the complaint was amended to conform the pleading to the proof by adding allegations to the effect that during the time that the defendant sought to enforce the ordinance against the plaintiff, other persons in the Town of Babylon had been carrying on similar operations without a permit, and that the attempted enforcement against the plaintiff for violations of the ordinance was exercised in a discriminatory, illegal and corrupt manner so as to destroy the business of the plaintiff "as a competitor of another business in which defendant, its attorney and its officials, or some of them, have been and/or are interested". For jurisdictional purposes the complaint was also amended to allege that the manner in controversy exceeds the sum of $3,000.

Before the trial of the case the plaintiff obtained an ex parte order to show cause on June 7, 1948, returnable on June 9, 1948, in which the plaintiff sought a temporary injunction pending the trial of the case. The order to show cause contained a stay which restrained the defendant from putting into effect or seeking to enforce the terms of the ordinance. On June 9, 1948, at the request of plaintiff's attorney, as appears from an affidavit of Oscar Murov, verified November 3, 1948, argument of the motion was adjourned to June 15, 1948. At that time the judge before whom the argument was had stayed all criminal prosecutions of employees of the plaintiff and reserved decision on the rest of the motion. On June 16, 1948 defendant applied to the Court of Appeals of the Second Circuit to vacate the stay or increase the bond, and a judge of that court denied the motion on condition that a bond of $10,000 be filed. Thus the operation of the plaintiff continued under the stay. On October 26, 1948, at the request of the judge who had reserved decision on plaintiff's motion for a preliminary injunction, the attorneys for the parties appeared before him and the judge informed them that he was disqualifying himself to act in the matter.

On November 3, 1948, before another judge of this court, a motion was made to vacate the stay of the order to show cause. That motion was never argued because of the death of the attorney of record for the plaintiff.

Such was the status of the motion to vacate the stay when the trial of this case came on before me on November 23, 1948. At that time the attorney for the Town stated that since the trial was to proceed he would withdraw the motion to vacate the stay with the privilege of renewing it if that became necessary.

The fundamental question to be determined by this court is whether it has jurisdiction to entertain the suit. In effect the plaintiff is asking the United States District Court to stay a criminal proceeding pending before a justice of the peace of the Town of Babylon, and to enjoin the Town from enforcing the terms of the ordinance. The ordinance of December 6, 1943 purports on its face to have been enacted pursuant to subdivision 21* of Sec. 130 of the Town Law of the State of New York, Consol.Laws c. 62. It is to be noted that the ordinance is one not for prohibition

---

* By subsequent amendments to the Town Law this section was renumbered, and is now subdivision 23.

but for licensing and regulating, and provides that no excavation other than one for the construction of a wall, a building or part thereof, or for farming or public use, shall be commenced except in conformity with the provisions of the ordinance. The challenged sections are parts of those numbered 3, 5, 6 and 8.

Sec. 3 regulates the fees to be imposed. A minimum fee of $10 for an area not exceeding 5,000 square feet is provided. If the area exceeds 5,000 square feet, the minimum fee shall be $25 plus $1 for each additional thousand square feet or fraction thereof exceeding 5,000 square feet.

Sec. 5 provides that the permit shall expire by limitation thirty days from the date of issuance unless extended by the Town Board. The section prescribed nothing in respect to what fees if any are to be paid for the renewal permit. Sec. 6 provides that before a permit will be issued, the owner or applicant must execute and file a surety company bond, the amount of which shall be fixed by the Town Board. The bond must be approved by the Board also as to form, sufficiency and manner of execution, and shall be conditioned for the faithful performance of the terms of the ordinance. The section also contains this provision: "Said bond shall remain in force and effect until a certificate of completion has been issued by the Town of Babylon, certifying to the fact that all provisions of the ordinance and conditions of the permit have been carried out to a satisfactory conclusion. Application for such certificate shall be made by the owner * * * upon forms provided by the Town * * * and shall be accompanied by a cross-section of the affected property prepared by a duly licensed engineer of the State of New York, after completion of the operations * * *"

Finally, Sec. 8, among other matters, contains the provision: "Upon completion of operations under the terms of the permit * * * the excavated area shall be refilled * * *. The affected area shall be graded to the level of the abutting highway, surfaced with a minimum of four inches of top soil, and seeded to insure fast growing vegetation."

The plaintiff's position with respect to Sec. 3—that relating to fees—is that the fee for the eighty acres would be $3,505 for a thirty day permit; and it is urged that on an annual basis the fees would amount to $42,060. The assessed value of the property is $35,235, and hence it is argued that such fee is unreasonable and unjust. It is said, moreover, that no sizable operation could be completed within the thirty day period. For the above reasons the provisions concerning the size and condition of the bond to be furnished are also deemed to be unreasonable.

Sec. 8 is attacked as imposing a cost of re-filling which would prevent the plaintiff from carrying on its business.

Despite its present contention that the ordinance is invalid, it appears that the plaintiff, on July 18, 1944, applied for a permit under the ordinance to permit it to remove sand and gravel to an approximate depth of 20 feet, on an area of 5,000 square feet, and duly filed a surety bond of the Royal Indemnity Company in the sum of $2,000. The defendant granted the plaintiff's application and duly issued a permit in accordance therewith. Thereafter the plaintiff conducted operations in the excavating of sand and gravel pursuant to the permit granted. On August 17, 1944 the plaintiff informed the defendant that it was withholding from sale a sufficient percentage of the excavated material to fill to road grade. On February 26, 1945 plaintiff filed a second application to permit it to excavate an additional 10 acres. This application was accompanied by a fee of $456 and a bond of the Royal Indemnity Company in the sum of $23,250. On March 13, 1945 the plaintiff wrote that though it considered the amount of the bond very high, it had

"no objection to putting it up, as we plan to create a valuable industrial property.

"The fee we feel is almost as much as this brush land is worth per acre. We are creating level, industrial property which will bring industry here and result in more assessable factories to the Town of Babylon."

The defendant duly issued a permit in response to that application. Thereafter it

appears that yearly extensions were applied for and granted, to permit excavations in the aforesaid two areas, but on February 26, 1948 the terms of the extensions of the permits expired.

It then developed that the Royal Indemnity Company, on January 12, 1948, notified the defendant that since its bonds would expire on February 26, 1948 it would not be responsible to the defendant for any liability under additional permits or extensions of existing permits.

Nevertheless the plaintiff continued excavations of sand and gravel between the expiration date of the two permits referred to up to June 1, 1948, without having obtained a permit or extension, and extended its operations into adjacent areas to which it had title, but without having obtained a permit to do so.

On April 28, 1948 the plaintiff tendered a check in the sum of $466 and a bond of the Century Indemnity Company of Hartford, in the sum of $25,500, to the building inspector of the defendant, but did not file an application for a permit. On receipt of the check and bond the building inspector of the defendant forwarded application forms to the plaintiff. The plaintiff then, on June 2, 1948, filed two applications requesting a permit for a new area, but on June 3, 1948 the defendant returned the aforesaid check of $466, the application and the bond of the Century Indemnity Company, because, so the defendant claimed, the application was not a renewal of any prior permit but was one for an additional area of 16.86 acres, that the fee was $755 and that the amount of the bond required was $38,500. At the same time objection was taken to the bond because it did not comply with the requirements of the ordinance since it contained a cancellation clause at variance with that condition of the ordinance which required that a bond remain in full force and effect until the licensee furnished a certificate of completion as required by Sec. 6 of the ordinance.

No certificate of completion was ever filed by the plaintiff.

As has been indicated, the question of what jurisdiction this court should retain is paramount. The broad question has been considered by the Supreme Court and its decisions are, of course, controlling here. Railroad Commission of Texas et al. v. Pullman Co. et al., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971; American Federation of Labor et al. v. Watson, Attorney General et al., 327 U.S. 582, 66 S.Ct. 761, 90 L.Ed. 873; Spielman Motor Sales Co., Inc. v. Dodge, 295 U.S. 89, 55 S.Ct. 678, 79 L.Ed. 1322.

The Pullman case involved a challenged statute of Texas as violative of the federal Constitution. The regulation of the state commission required that sleeping cars should be continuously in charge of an employee "having the rank and position of Pullman conductor". [312 U.S. 496, 61 S. Ct. 644] The order was attacked on the ground that since porters were Negroes and conductors white, it in effect had discriminated against Negroes in violation of the Fourteenth Amendment. In the opinion of the Supreme Court the complaint of the Pullman porters undoubtedly tendered a substantial constitutional issue, but the court observed that the law of Texas furnished easy and ample means for determining the commission's authority, and held that in the absence of a definitive ruling in the state courts, "the district court should exercise its wise discretion by staying its hands." The decree of the District Court granting an injunction was reversed with the instruction "We therefore remand the cause to the district court, with directions to retain the bill pending a determination of proceedings, to be brought with reasonable promptness, in the state court in conformity with this opinion."

The Pullman case is discussed in the Harvard Law Review, Vol. 54, pages 1379-1390, and the point emphasized that a decision by a federal court would be undesirable if it involved a forecast of the ultimate determination of the highest state court.

In American Federation of Labor v. Watson, supra, a Florida statute was challenged which in substance provided that the right of persons to work was not to be denied on account of membership or non-membership in any labor union, and that the clause was not to be construed to deny or abridge the right of employees, through a labor union, to bargain collectively with their employer.

The suit was brought to enjoin that provision of the statute on the ground that it violated the First Amendment, the Fourteenth Amendment, and was in conflict with the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., and the Norris-LaGuardia Act, 29 U.S.C.A. § 101 et seq. The District Court passed on the merits of the controversy, 60 F.Supp. 1010, and the Supreme Court observed: "In doing so at this stage of the litigation, we think it did not follow the proper course. The merits involve substantial constitutional issues concerning the meaning of a new provision of the Florida constitution which, so far as we are advised, has never been construed by the Florida courts. Those courts have the final say as to its meaning. When authoritatively construed, it may or may not have the meaning or force which appellees now assume that it has. In absence of an authoritative interpretation, it is impossible to know with certainty what constitutional issues will finally emerge." 327 U.S. at pages 595, 596, 66 S.Ct. at page 767, 90 L.Ed. 873.

The foregoing passage is, of course, on all fours with the observations of Mr. Justice Frankfurter in the Pullman case. Indeed Mr. Justice Douglas continues, 327 U.S. at page 599, 66 S.Ct. at page 769, 90 L.Ed. 873: "It is said that since the continuance of litigation in the state courts is the only ground asserted for equitable relief, the entire purpose of the present suit will be defeated by retaining the bill pending determination of proceedings in the state courts. But the problem is not unique. It was implicit in Railroad Commission v. Pullman Co., supra."

So the judgment of the District Court was reversed, "with directions to retain the bill pending the determination of proceedings in the state courts in conformity with this opinion".

There is, of course, Supreme Court authority for discountenancing suits in equity in the District Courts which seek to restrain prosecution of criminal actions in the state courts. See Spielman Motor Sales Co., Inc., v. Dodge, supra; Douglas et al. v. City of Jeannette et al., 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324. This case involved an effort to restrain a city from enforcing an ordinance which prohibited the solicitation of orders for merchandise without first procuring a license from the city authorities and paying a license tax. For violation thereof the ordinance provided for the imposition of a fine, and if the fine were not paid, for imprisonment from five to thirty days. Mr. Chief Justice Stone, writing for the court, observed that a District Court may even on its own motion object to the want of equity jurisdiction and "Especially should it do so where its powers are invoked to interfere by injunction with threatened criminal prosecutions in a state court." 319 U.S. at page 162, 63 S.Ct. at page 880, 87 L.Ed. 1324.

Further he observed: "It is a familiar rule that courts of equity do not ordinarily restrain criminal prosecutions. No person is immune from prosecution in good faith for his alleged criminal acts. Its imminence, even though alleged to be in violation of constitutional guarantees, is not a ground for equity relief since the lawfulness or constitutionality of the statute or ordinance on which the prosecution is based may be determined as readily in the criminal case as in a suit for an injunction. Davis & Farnum Mfg. Co. v. Los Angeles, 189 U.S. 207, 23 S.Ct. 498, 47 L.Ed. 778; Fenner v. Boykin, 271 U.S. 240, 46 S.Ct. 492, 70 L.Ed. 927." 319 U.S. at page 163, 63 S.Ct. at page 881, 87 L.Ed. 1324.

Applying these Supreme Court decisions to the case at bar, we find that there has been no authoritative determination of the ordinance in question by the highest court of the state. However, a state trial court held the ordinance valid in Hughes-Kelly Corporation v. Town of Babylon, an action to restrain the Town and its officials from enforcing or attempting to enforce the ordinance and from proceeding with certain pending criminal prosecutions. In the decision of a motion for a preliminary injunction, Justice Daly of the State Supreme Court said — Misc. —, 86 N.Y.S.2d 48, 49: "It may be stated preliminarily that courts of original jurisdiction do not declare a statute unconstitutional unless the violations are plain and patent upon the face of the statute. In re 1175 Evergreen Ave., etc., 158 Misc. 158, 284 N.Y.S. 16, affirmed 270 N.Y. 436, 1 N.E.2d 838. * * * I am of the opinion that the ordinance in

question is upon its face reasonable and just and its natural consequences will be in the direction of public health and welfare. The plaintiffs have failed to demonstrate otherwise in their papers * * *. There is no impediment to their raising the constitutional question in the prosecution now pending in the Justice's' Court. See, People v. Kesbec, Inc., 282 N.Y. 777, 27 N. E.2d 50 * * *."

The motion was therefore denied.

See also Paris et al. v. Metropolitan Life Ins. Co. et al., 167 F.2d 834, 836, where Judge Augustus N. Hand for our circuit wrote: " * * * the State Court should be allowed to construe its own law because only its decision can be regarded as definitely authoritative, and also because such a determination by the State Court might render it unnecessary to pass upon the constitutional question we have discussed."

People v. Gerus, Co. Ct., 69 N.Y.S.2d 283, 296, hinged on the consideration of an ordinance of the Town of Hempstead enacted pursuant to Town Law, § 130, subd. 21. The case is of particular interest since the counsel for the Town of Babylon testified that in drafting the Babylon ordinance he patterned it on the Hempstead ordinance and also on that of the Town of Oyster Bay. Gerus attacked the validity of the ordinance. Justice Cortland A. Johnson in affirming the conviction held that the statute empowering the Town Board to enact the ordinance was valid; that the ordinance enacted by the Town Board of Hempstead pursuant thereto did not prohibit excavation and removal; that the regulatory provisions of the ordinance were reasonable and bore a reasonable relation to the ends and purposes sought to be attained, namely "maintenance of public health and safety, preservation of property values and enhancement of the general public prosperity and welfare". He also held that "The ordinance does not place arbitrary power in the hands of the Town Board and Building Inspector. If refusal of a permit be arbitrary, unreasonable or capricious, its issuance may be obtained by legal action". .

It is to be observed that the sections of the ordinance challenged by the plaintiff are found in substantially the same terms in the ordinances of both Hempstead and Oyster Bay.

It does not appear that the higher courts of the state, either the Appellate Division or the Court of Appeals, have passed on the validity of the ordinance of the Town of Hempstead or that of the defendant herein.

■ In consequence the admonition of the Supreme Court to the District Court not to anticipate such determination must be adhered to. The plaintiff has an adequate remedy in the state court to secure the relief that it asks 'for in this action. Indeed it appears that in the criminal proceeding in the Justice's Court it raised the question of constitutionality.

It is to be noted that at the hearing held June 1st before the Justice of the Peace, the attorney representing the plaintiff and Mr. Price moved to remove the proceeding to the Supreme Court. The District Attorney representing the County of Suffolk agreed, and the court granted the motion, the attorney at the same time stating that by so doing he did not concede "any validity for this proceeding". This action was commenced nevertheless before such removal was effected.

Not only is there open to the plaintiff a remedy to challenge the validity of the ordinance in the state court; but there is also available on the civil side the right to seek the same equitable relief which is part of its prayer in this action.

I shall not, therefore, review the record for the purpose of determining the merits of the action since I conclude that the court is at present without jurisdiction to pass on the issues raised. However, the action will be retained here pending final disposition of these issues in the courts of the State of New York, in the eventuality that final action in the state courts is not definitive of the equitable issues asserted of irreparable injury, as alleged in the complaint as amended. Meanwhile the stay of the state court proceedings will be vacated.

The defendant may have a decree in conformity with the foregoing opinion.

Appropriate findings and conclusions of law in conformity with this opinion will be presently filed.