*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 08a0460p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

In re:  JASON SANDERS,

> *Debtor.*

———————————————————

KRISPEN S. CARROLL, Chapter 13 Trustee,

> *Appellant,*

*v.*

JASON SANDERS,

> *Appellee.*

No. 08-1201

Appeal from the United States District Court

for the Eastern District of Michigan at Detroit.

Nos. 07-12234; 07-40258—Nancy G. Edmunds, District Judge;

Steven W. Rhodes, Bankruptcy Judge.

Argued:  December 9, 2008

Decided and Filed:  December 29, 2008

Before:  GILMAN, SUTTON and KETHLEDGE, Circuit Judges.

———————————

**COUNSEL**

**ARGUED:**  Krispen S. Carroll, OFFICE OF CHAPTER 13 TRUSTEE, Detroit, Michigan, for Appellant.  Gary Boren, BOREN & CAREY, Dearborn, Michigan, for Appellee. **ON BRIEF:**  Krispen S. Carroll, OFFICE OF CHAPTER 13 TRUSTEE, Detroit, Michigan, for Appellant.  Gary Boren, BOREN & CAREY, Dearborn, Michigan, for Appellee.

1

————————————

**OPINION**

————————————

SUTTON, Circuit Judge.  Under the Bankruptcy Code, a chapter 13 debtor may not receive a discharge of his debts if he "received a discharge . . . in a case filed under chapter 7 . . . of this title during the 4-year period preceding" the filing of his chapter 13 petition. 11 U.S.C. § 1328(f).  Jason Sanders filed this chapter 13 case more than four years after he filed an earlier chapter 7 case but less than four years after the bankruptcy court issued his chapter 7 discharge.  The question is whether the four-year clock runs from the date he "filed" the chapter 7 petition or the date of the "discharge."  Because we conclude that § 1328(f) sets a date-of-filing trigger and because Sanders filed his chapter 7 petition more than four years before initiating this chapter 13 proceeding, the Code permits the discharge.

I.

The relevant facts are not in dispute.  On July 29, 2002, Sanders filed a voluntary petition for bankruptcy under chapter 7.  The bankruptcy court granted him a discharge on February 5, 2003.

On January 5, 2007, Sanders filed a second bankruptcy petition, this time under chapter 13, seeking confirmation of his debt-repayment plan and a second discharge.  The chapter 13 trustee, Krispen Carroll, objected to the confirmation and the discharge.  The bankruptcy court confirmed Sanders' payment plan but denied his request for a discharge, explaining that the Bankruptcy Code barred it from granting a discharge to a debtor who had already received one under chapter 7 within the preceding four years.  *See* 11 U.S.C. § 1328(f)(1).

The district court reversed.  Section § 1328(f)(1), it reasoned, does not bar Sanders from obtaining a discharge, notwithstanding the date of the first discharge, because he *filed* the petition in that chapter 7 case more than four years before initiating this chapter 13 proceeding.  Carroll appealed.

II.

Because this "case . . . comes to us from the bankruptcy court by way of an appeal from a decision of a district court, we review directly the decision of the bankruptcy court." *In re Cook*, 457 F.3d 561, 565 (6th Cir. 2006) (internal quotation marks omitted). In doing so, we take a fresh look at its legal conclusions.

When Congress overhauled the Bankruptcy Code in 2005, it limited a debtor's ability to obtain multiple discharges by filing one bankruptcy proceeding after another. *See* Bankruptcy Abuse Prevention and Consumer Protection Act (BAPCPA) of 2005, Pub. L. No. 109-8, § 312(2), 119 Stat. 23, 87 (codified as amended at 11 U.S.C. § 1328(f)). To that end, it enacted § 1328(f), which provides:

> (f) Notwithstanding [chapter 13's provisions authorizing discharges], the court shall not grant a discharge of all debts provided for in the plan . . . if the debtor has received a discharge--
>
> > (1) in a case filed under chapter 7, 11, or 12 of this title during the 4-year period preceding the date of the order for relief under [chapter 13], or
> >
> > (2) in a case filed under chapter 13 of this title during the 2-year period preceding the date of such order.

11 U.S.C. § 1328(f). In applying this four-year bar on seeking a second discharge, as in applying all time-limitation bars, a court must answer two questions: When does the clock start running, and when does it stop? The parties agree that the clock stops running upon the *filing* of the chapter 13 petition, and so do we. By referring to "the order for relief" in the chapter 13 case, subsection (f)(1) makes clear that the time limit ends on the date the chapter 13 petition was filed. As the Code elsewhere explains, a voluntary bankruptcy case is commenced by filing a petition, *id.* § 301(a), and "commencement of a voluntary case . . . constitutes an order for relief," *id.* § 301(b).

What separates the parties is the other question: When does the statute's four-year forbidden window begin? The date of the *filing* of the chapter 7 petition? Or the date of the chapter 7 *discharge*? Sanders insists that the key date is when he *filed* his prior petition under chapter 7 on July 29, 2002, while Carroll claims that the clock did not start until

Sanders *received* the discharge in his first case on February 5, 2003, bringing his present petition (barely) within the four-year ban.

As we see it, the four-year prohibition began when Sanders filed his first petition, not when he received his first discharge. In reaching this conclusion, we start with a point of grammar—that "[w]hen a word such as a pronoun points back to an antecedent or some other referent, the true referent should generally be the closest appropriate word," Bryan A. Garner, *Garner's Modern American Usage* 523–24 (2003); *see also* 2A Norman J. Singer & J.D. Shambie Singer, *Sutherland Statutes and Statutory Construction* § 47:33 (7th ed. 2007). Consistent with this principle, the courts ordinarily assume that "a limiting clause or phrase . . . modif[ies] only the noun or phrase that it immediately follows." *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003). Although not an "absolute" imperative, the "rule of the last antecedent" creates at least a rough presumption that such qualifying phrases attach only to the nearest available target. *Id.* (internal quotation marks omitted).

Read with this rule in mind, § 1328(f)(1)'s pieces fit sensibly together, each phrase modifying the one that comes before it and each phrase having an independent task to do. The "in a case filed under" phrase that begins subsection (f)(1) modifies "received a discharge," and the phrase that frames the four-year window—"during the 4-year period preceding [the second petition]"— modifies the "filed under" fragment that comes immediately before it. 11 U.S.C. § 1328(f)(1); *cf. Branigan v. Bateman (In re Bateman)*, 515 F.3d 272, 277–78 & n.8 (4th Cir. 2008) (concluding that reading the nearly identical language of § 1328(f)(2) the same way "gives effect to the logical sequence of the language used," because under this reading "[a]ll words are given effect" and "[n]o punctuation needs to be added or deleted" to make sense of the statute) (internal quotation marks omitted). The upshot is this: A debtor may not receive a discharge under chapter 13 if he already received a discharge under chapter 7 and the two cases were filed less than four years apart.

Carroll's contrary construction—that the four-year window begins on the date of the first discharge—requires reading "during the 4-year period" as reaching back to the phrase "received a discharge" in subsection (f)'s opening clause. But she points to nothing in the statute to rebut the last-antecedent presumption. Congress no doubt could have worked

around this grammatical rule had it wished, *see Bateman*, 515 F.3d at 278 & n.8, but we see nothing in the section to justify dispensing with this default rule of interpretation.

Besides honoring the last-antecedent rule, this construction of the statute has another virtue:  It avoids reading the word "filed" out of the statute.  Had Congress meant to adopt a discharge-to-filing rule, it could have satisfied that objective "by omitting the word 'filed' entirely" from the provision.  *Id.* at 278.  The clipped phrase ("a case under") would perform the very function that Carroll contends "in a case *filed* under" accomplishes:  denoting the chapter under which the debtor filed his petition.  Throughout the Bankruptcy Code, Congress has deployed the "a case under" phrase to perform that same function.  *See, e.g.*, 11 U.S.C. §§ 103(a)–(k), 105(d)(2)(B), 321(a), 502(a), 706(a)–(d), 1141(d)(3)(C), 1302(b)(3), 1517(d).  Carroll offers no explanation why Congress would have added the word "filed" to § 1328(f)(1) when a more familiar phrase, which does not include the term, would have achieved the same objective.  Nor does Carroll's reading offer any role for "filed" to play in the statute, save for superfluity, a result we must resist where possible.  *See, e.g.*, *Mountain States Tel. & Tel. Co. v. Pueblo of Santa Ana*, 472 U.S. 237, 249 (1985).

We have some company in reaching this conclusion.  Although no other court of appeals has addressed this precise issue, the Fourth Circuit has held that § 1328(f)(2)'s two-year time-out between obtaining discharges under chapter 13 begins on the date the first petition is filed, not when the debtor receives the first discharge.  *See Bateman*, 515 F.3d at 280; *accord Gagne v. Fessenden* (*In re Gagne*), 394 B.R. 219, 230 (B.A.P. 1st Cir. 2008); *In re Myers*, No. 07-80670, 2008 WL 2783455, at *3 (Bankr. M.D. Ala. June 26, 2008); *In re Ward*, 370 B.R. 812, 814–15 (Bankr. D. Neb. 2007); *In re Witherspoon*, No. 06-05611, 2007 WL 5582729, at *1–2 (Bankr. M.D. Tenn. Feb. 1, 2007); *In re Graves*, No. 06-10634, 2007 WL 1075108, at *4–8 (Bankr. D. Md. Jan. 19, 2007); *In re West*, 352 B.R. 482, 487 (Bankr. E.D. Ark. 2006).  A few courts, it is true, have suggested in dicta that § 1328(f)(1) creates a discharge-date-to-filing-date time frame.  *See In re Sidebottom*, 430 F.3d 893, 897 n.1 (7th Cir. 2005); *In re Williams*, 394 B.R. 550, 567 (Bankr. D. Colo. 2008); *In re Perkins*, 381 B.R. 530, 536 n.6 (Bankr. S.D. Ill. 2007); *In re Lilly*, 378 B.R. 232, 234 (Bankr. C.D. Ill. 2007); *In re Selinsky*, 365 B.R. 260, 263 (Bankr. S.D. Fla. 2007).  But to our knowledge every federal court to decide the question definitively has held that § 1328(f)(1)'s four-year embargo begins on the date of filing, not the date of discharge.  *See, e.g.*, *In re Ybarra*, 359

B.R. 702, 709 (Bankr. S.D. Ill. 2007); *In re Lewis*, 376 B.R. 849, 850–51 (Bankr. M.D. Tenn. 2007); *In re Knighton*, 355 B.R. 922, 926 (Bankr. M.D. Ga. 2006); *McDow v. Ratzlaff* (*In re Ratzlaff*), 349 B.R. 443, 444 (Bankr. D.S.C. 2006); *In re McGhee*, 342 B.R. 256, 258 (Bankr. W.D. Ky. 2006); *McDow v. Sours* (*In re Sours*), 350 B.R. 261, 269 (Bankr. E.D. Va. 2006); *accord* 8 *Collier on Bankruptcy* ¶ 1328.06[1]–[2] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. 2007); William Houston Brown, *Taking Exception to a Debtor's Discharge: The 2005 Bankruptcy Amendments Make It Easier*, 79 Am. Bankr. L.J. 419, 448–49 (2005).

In resisting this reading, Carroll offers two reasons that the four-year clock should not start running until the date of the first discharge. *First*, she points to two other serial-filing provisions in chapter 7 that predate § 1328(f) and that impose parallel time limits on debtors seeking discharges. Section 727(a)(8) of the Code provides that, where a debtor files a petition for relief under chapter 7, the bankruptcy court "shall grant a discharge, unless . . . the debtor has been granted a discharge under [chapter 7, chapter 11 or other various provisions] in a case commenced within 8 years before the date of the filing of the petition." 11 U.S.C. § 727(a)(8). Section 727(a)(9) imposes a similar limit using almost identical language. *See id.* § 727(a)(9) (barring a second petition where "the debtor has been granted a discharge under [chapter 12, chapter 13 or other various provisions] in a case commenced within six years before the date of the filing of the petition"). Conceding that *these* provisions impose a filing-to-filing rule, Carroll insists that the slight differences in syntax show that § 1328(f)(1) embodies a discharge-to-filing rule. Not so.

That sections 727(a)(8) and (a)(9) use the word "commenced" instead of "filed" tells us little because a case is "commenced" upon "filing . . . a petition." *Id.* § 301(a). Nor does it matter that in those two sections the word "commenced" comes immediately before the phrase creating the time limitation, *see id.* § 727(a)(8) ("commenced within 8 years before the date of the filing"); *id.* § 727(a)(9) ("commenced within 6 years before the date of the filing"), while in § 1328(f)(1) the phrase "under chapter 7, 11, or 12 of this title" separates the word "filed" from "during the 4-year period," *id.* § 1328(f)(1). The inclusion of this intervening phrase offers no reason to search for an antecedent even earlier in the sentence. It makes more sense to read the time-limiting language as qualifying the entire "filed under" phrase that it follows.

*Second*, invoking *Church of the Holy Trinity v. United States*, 143 U.S. 457 (1892), Carroll appeals to the statute's overarching purpose. The primary "evil" at which Congress aimed, she says, was the danger of debtors obtaining duplicative discharges. Br. at 12 (internal quotation marks omitted). Yet a filing-to-filing approach not only would shorten the no-filing period Congress created, but it also would turn § 1328(f)(2)—subsection (f)(1)'s sister provision that employs nearly identical language—into a nullity.

Carroll is short on specifics, but the argument as articulated by the bankruptcy court runs as follows: Subsection (f)(2) imposes a two-year ban on successive discharges under chapter 13. But most chapter 13 cases resulting in discharges last three to five years. The Code, indeed, requires a proposed chapter 13 repayment plan to span at least three years unless the debtor (by arrangement or later good fortune) repays all of his unsecured debts in less time. *See* 11 U.S.C. § 1325(b)(4)(A)(i), (B). So if the two-year prohibition begins when the first petition is filed, § 1328(f)(2)'s bar will affect very few cases. In most cases where a debtor *does* obtain a chapter 13 discharge in less than two years, moreover, the debtor would have satisfied the creditors' claims, and such "creditor[s] would not merit or need any additional protection in the event of a subsequent chapter 13 case." JA 15. Rather than adopt a reading that would effectively erase (f)(2) from the statute, the bankruptcy court construed (f)(1) to start the clock on the date of discharge.

No doubt, we are reluctant to construe a statute in a way that renders it a nullity or, worse, an absurdity. *See Mountain States Tel. & Tel.*, 472 U.S. at 249. But we see no danger of that being the case here. *Cf. Bateman*, 515 F.3d at 279 (rejecting the same argument). Even if we assume (without deciding) that § 1328(f)(2) creates the same filing-to-filing rule we read § 1328(f)(1) to impose, neither Carroll nor the bankruptcy court suggests that there can *never* be a case in which § 1328(f)(2) would apply. A debtor who receives a "hardship discharge" under § 1328(b), for example, could readily fall within § 1328(f)(2)'s limits. *See* 8 *Collier on Bankruptcy* ¶ 1328.06[2]. So can a debtor who repays all of his debts in under two years, either by sticking to the terms of a repayment plan that provides for paying off all the debtor's unsecured debts in two years or less, *see* 11 U.S.C. § 1325(b)(4), or by agreeing to a longer repayment term but then refinancing the debt and paying off the chapter 13 plan early, *see, e.g.*, *Graves*, 2007 WL 1075108, at *7. Nor would it be absurd to apply the two-year no-filing rule to such a debtor: The old creditors

he repays may have no stake in preventing the debtor's default down the road, but the debtor's new creditors surely do, and Carroll offers no reason why Congress could not have had those creditors in mind when it enacted § 1328(f)(2) to discourage serial chapter 13 discharges.

Although these examples show that, even under a filing-to-filing construction, § 1328(f)(2) will apply in some cases, we must acknowledge that these cases will be few and far between. At oral argument, the parties agreed that the percentage of chapter 13 debtors who obtain a discharge in less than two years is small—no more than 5% and perhaps no more than 1%. Even where § 1328(f)(2) applies, moreover, the provision likely will make little difference: Under a filing-to-filing rule, the provision requires a chapter 13 debtor who has obtained a discharge in under two years to wait just for the remainder of the 24-month window (which began on the date of the first filing), and that will often amount to just a few additional months. Although Congress has some reason to restrict duplicative discharges in this setting, it is not the kind of setting that one naturally would expect Congress to target. Such cases after all involve either a debtor who cannot pay his debts due to circumstances beyond his control (a prerequisite for a hardship discharge) or one who has satisfied all of his unsecured creditors' claims quickly.

In deciding this case, we thus must come to terms with an essential reality: Even if a filing-to-filing reading neither turns § 1328(f)(2) into a nullity nor produces a truly absurd result, it comes close to the line on both fronts. So, Carroll and the bankruptcy court ask, why not simply read the statute in accord with our estimation of Congress's purpose to avoid this counterintuitive result?

The answer is that a purpose-driven approach to this case creates as many problems as it solves. The most conspicuous place to look for the purpose of a law of course is the text of the statute that both houses of Congress passed and that the President signed into law. *See W. Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 98 (1991), *superseded by statute as recognized in L & W Supply Corp. v. Acuity*, 475 F.3d 737, 740 (6th Cir. 2007). And that text, as we have shown, supports a filing-to-filing rule. Once we leave the safety of the statutory terms and begin searching for indicia of legislative purpose in other places, we must account for all of the clues we find, even when (as in this case) those clues not only

point in different directions but do as much to confuse as to provide anything approaching coherent guidance about how to answer the question at hand.

No one in this case, to begin, maintains that the legislative history offers any meaningful insights. The broad-brushstroke pronouncements of purpose in the House committee report tell us only that Congress wanted a balanced bill: one that short-circuits certain abuses while extending new (primarily procedural) protections to debtors. H.R. Rep. No. 109-31(I), at 2–3 (2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 88–90. And the only passage that deals directly with § 1328(f) presents a truly peculiar view of § 1328(f)'s meaning: The report describes § 1328(f)(1) as imposing a *discharge*-to-filing rule and § 1328(f)(2) as imposing a *filing*-to-filing rule. *Id.* at 76, 2005 U.S.C.C.A.N. at 143. Beyond inexplicably interpreting the nearly identical terms of (f)(1) and (f)(2) to create different rules—a reading not even Carroll advocates, as indeed her entire argument begins from the opposite premise—the committee report applies a filing-to-filing rule only in the one context where all agree it makes the least sense: back-to-back chapter 13 cases. The only pertinent legislative history thus ignores the statutory text, makes no sense of the law's putative purpose and, even then, still manages to undercut Carroll's reading.

Even if it is true that a filing-to-filing rule converts § 1328(f)(2) into a predominantly empty gesture, moreover, Carroll's effort to divine Congress's objective in passing the law makes little sense as well. Carroll insists that by enacting § 1328(f), as in enacting other parts of BAPCPA, Congress expressed its preference that debtors seek relief under chapter 13 (thus repaying most or all of their debts, even if over a longer period) as opposed to chapter 7 (liquidating their assets and wiping out their balance sheets). Perhaps so. But if that is true, the law as Carroll construes it seems a strange way to reach that end. Under Carroll's discharge-to-filing reading, § 1328(f)(2) would bar *all* debtors who obtain a discharge under chapter 13 from seeking another one for an additional two years, whether it took them four days or four years to obtain the first discharge. That means the typical chapter 13 debtor, whose bankruptcy case lasts three to five years, would have to wait a total of five to seven years before initiating a new case. A filing-to-filing reading, by contrast, leaves the vast majority of those debtors alone. In an effort to prevent the provision from placing a small obstacle in front of a few debtors—to avoid a construction that gives the

subsection a small bite and few teeth—Carroll would instead subject all chapter 13 debtors to a much more severe sanction.

Stranger still, Carroll's reading of § 1328(f)(2) would have the perverse effect of barring some debtors from seeking chapter 13 relief whom the law allows to obtain a *chapter 7* discharge—a result at odds with her own characterization of Congress's purpose. Ordinarily, a debtor who has obtained a chapter 13 discharge must wait six years before filing a chapter 7 petition (at least one that can result in a discharge). *See* 11 U.S.C. § 727(a)(9). But if that debtor received the previous chapter 13 discharge after either (A) paying all of his unsecured debts in full or (B) proposing a payment plan in good faith, making his best effort to complete the payment plan in full and actually making payments totaling at least 70% of his unsecured debts, the debtor can turn around and obtain a chapter 7 discharge the *next day*. *See id.*; *see also Bateman*, 515 F.3d at 279–80; *Myers*, 2008 WL 2783455, at *2. Yet under Carroll's discharge-to-filing interpretation of § 1328(f)(2), that same debtor would have to wait another two years to seek a second chapter 13 discharge. Carroll's construction thus would effectively encourage debtors to pursue what are known as "chapter 20" bankruptcies (i.e., a debtor obtaining a chapter 13 discharge followed by a chapter 7 discharge)—the very evil she contends Congress designed the statute to discourage—by closing the door on the primary (and preferred) alternative to that disfavored practice.

Instead of providing a persuasive reason to read the statute against the grammatical grain, Carroll's purpose-based argument simply trades one unusual, if not bizarre, result for another. And it does so to save from (potential) desuetude a subdivision no one suggests was the centerpiece of § 1328(f)'s design. As applied here, a purpose-driven approach to statutory interpretation defaults on its promise: of helping us to understand what the provision means. Searching for signals from competing policies, surrounded by perplexing results on all sides, brings us little closer to grasping Congress's intent than relying on text and familiar canons of construction.

Congress, like the courts, makes mistakes from time to time, and some provisions of BAPCPA may be among them. One bankruptcy judge, driven to creative frustration, observed that, "while a debate rages over whether William Shakespeare or someone else

wrote the plays and sonnets attributed to the Bard of Avon, there will never be a similar debate over the authorship of the BAPCPA." *In re Grydzuk*, 353 B.R. 564, 566–67 (Bankr. N.D. Ind. 2006). Nor is it unheard-of for Congress to enact a provision that does not line up neatly with its drafters' apparent purposes. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79 (1998). But whether § 1328(f) is a statutory misstep is not a question we can answer, since it depends on policy judgments only Congress can make. Rather than attempt to divine the statute's spirit and rewrite its words to match, we leave the ball in Congress's court where it belongs. *See FCC v. NextWave Personal Commc'ns, Inc.*, 537 U.S. 293, 305–08 (2003). "What is of paramount importance is that Congress be able to legislate against a background of clear interpretive rules, so that it may know the effect of the language it adopts." *Finley v. United States*, 490 U.S. 545, 556 (1989), *superseded by statute as recognized in Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 558 (2005). By adhering to a stable set of rules, including familiar canons of construction, we ensure that Congress in the future can say exactly what it means, both in enacting new statutes and correcting our interpretive errors. Accordingly, because we assume that "Congress meant what it said" in enacting this statute, *NextWave*, 537 U.S. at 307, because Carroll's arguments do not come to grips with the presumption in favor of the last-antecedent rule and the presumption against reading a term out of a statute and because Carroll's purpose-driven approach creates as many problems as it solves, we conclude that the section's four-year ban begins on the date the first petition is filed.

III.

For these reasons, we affirm the district court's decision.