In the

# United States Court of Appeals

## For the Seventh Circuit

No. 07-3119

BABAJIDE SOBITAN,

*Plaintiff-Appellant*,

*v.*

LORI GLUD, et al.,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:06-cv-05366—**John W. Darrah**, *Judge*.

ARGUED APRIL 17, 2008
REARGUED MAY 14, 2009—DECIDED DECEMBER 9, 2009

Before RIPPLE, MANION and TINDER, *Circuit Judges*.

RIPPLE, *Circuit Judge*. Babajide Sobitan was detained at
O'Hare International Airport by a United States Customs
and Border Protection Enforcement officer for illegally
reentering the United States. He subsequently was prose-
cuted for illegal reentry and was convicted.

In 2006, Mr. Sobitan instituted this action against Lori
Glud, the customs officer who had arrested him, and
against John Podliska, the Assistant United States Attorney
who prosecuted his case. In his complaint, Mr. Sobitan

alleged that both defendants failed to inform him of his consular rights under Article 36 of the Vienna Convention on Consular Relations ("Vienna Convention"), Apr. 24, 1963, 21 U.S.T. 77, 596 U.N.T.S. 261. The Government filed a motion for substitution and dismissal under the Federal Employees Liability Reform and Tort Compensation Act ("Westfall Act"),[1] 28 U.S.C. § 2679. The district court granted the motion and dismissed the action. Mr. Sobitan appealed, and we now affirm the judgment of the district court.

# I

## BACKGROUND

Mr. Sobitan is a Nigerian citizen. In 2003, he attempted to enter the United States at O'Hare International Airport,

---

[1] The Federal Employees Liability Reform and Tort Compensation Act is commonly referred to as the Westfall Act because it was enacted in response to the Supreme Court's decision in *Westfall v. Erwin*, 484 U.S. 292 (1988). In *Westfall*, the Court recognized a federal employee's immunity from suit only when the employee (1) was acting within the scope of his employment and (2) was performing a discretionary function. As explained by the Court later, "Congress reacted quickly to delete the discretionary function requirement, finding it an unwarranted judicial imposition, one that had created an immediate crisis involving the prospect of personal liability and the threat of protracted personal tort litigation for the entire Federal workforce." *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 425-26 (1995) (internal quotation marks and citations omitted).

where he was detained and arrested by Ms. Glud for illegally reentering the United States. He subsequently was prosecuted by Mr. Podliska. Neither Ms. Glud nor Mr. Podliska informed Mr. Sobitan of his right to consular notification provided by Article 36 of the Vienna Convention.[2] Mr. Sobitan was convicted on the charge.

In 2006, Mr. Sobitan filed a complaint against Ms. Glud and Mr. Podliska in which he sought compensatory and punitive damages for their alleged failure to inform him of his rights under Article 36 during his arrest, as well as his subsequent detention and prosecution.[3] The

---

[2] The defendants dispute these facts; however, because the matter was decided on a motion to dismiss, the facts as alleged by the plaintiff are presumed to be true. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) ("We construe the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in her favor.").

[3] Specifically, Article 36 of the Vienna Convention provides:

1. With a view to facilitating the exercise of consular functions relating to nationals of the sending State:

    (a) consular officers shall be free to communicate with nationals of the sending State and to have access to them. Nationals of the sending State shall have the same freedom with respect to communication with and access to consular officers of the sending State;

    (b) if he so requests, the competent authorities of the receiving State shall, without delay, inform the consular post of the sending State if, within its consular district,

(continued...)

Government filed a motion for substitution and dismissal under the Westfall Act, 28 U.S.C. § 2679(b).

The district court granted the Government's motion. It substituted the United States as the defendant and dismissed Mr. Sobitan's claim with prejudice. It held that,

---

[3] (...continued)

> a national of that State is arrested or committed to prison or to custody pending trial or is detained in any other manner. Any communication addressed to the consular post by the person arrested, in prison, custody or detention shall also be forwarded by the said authorities without delay. The said authorities shall inform the person concerned without delay of his rights under this sub-paragraph;

> (c) consular officers shall have the right to visit a national of the sending State who is in prison, custody or detention, to converse and correspond with him and to arrange for his legal representation. They shall also have the right to visit any national of the sending State who is in prison, custody or detention in their district in pursuance of a judgment. Nevertheless, consular officers shall refrain from taking action on behalf of a national who is in prison, custody or detention if he expressly opposes such action.

> 2. The rights referred to in paragraph 1 of this Article shall be exercised in conformity with the laws and regulations of the receiving State, subject to the proviso, however, that the said laws and regulations must enable full effect to be given to the purposes for which the rights accorded under this Article are intended.

Vienna Convention on Consular Relations art. 36, Apr. 24, 1963, 21 U.S.T. 77, 596 U.N.T.S. 261.

under the Westfall Act, the Government was the proper defendant. Specifically, it rejected Mr. Sobitan's argument that his Vienna Convention claim arose under a federal statute and therefore was excepted from the Westfall Act's coverage. *See* 28 U.S.C. § 2679(b)(2). Because the Westfall Act mandated that the Government be substituted for the individual defendants, the district court continued, Mr. Sobitan was required to adhere to the procedural requirements set forth in the Federal Tort Claims Act, 28 U.S.C. § 2675(a) ("FTCA"). The district court found that Mr. Sobitan had failed to exhaust his administrative remedies before instituting his action as required by 28 U.S.C. § 2675(a). The court therefore dismissed with prejudice Mr. Sobitan's complaint.

## II

## DISCUSSION

On appeal, Mr. Sobitan claims that the district court erred in substituting the Government as a defendant pursuant to the Westfall Act. Mr. Sobitan acknowledges that the Act provides for the substitution of the United States as a party in any action brought "for injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 2679(b)(1). He argues, however, that his action falls within the exception set forth in § 2679(b)(2) for actions "brought for a violation of a statute of the United States." *Id.* § 2679(b)(2)(B). According to Mr. Sobitan, the term

"statute" encompasses "treaty." Therefore, because his action seeks relief for violations of his rights under a treaty, specifically the Vienna Convention, the substitution provision of the Westfall Act does not apply to his action. We begin our consideration of Mr. Sobitan's argument with the language of the Act. *See, e.g., Bass v. Stolper, Koritzinsky, Brewster & Neider*, 111 F.3d 1322, 1324-25 (7th Cir. 1997) ("As with all issues of statutory interpretation, the appropriate place to begin our analysis is with the text itself, which is the most reliable indicator of congressional intent." (citations omitted)).

## A. The Westfall Act

We recently have observed that "[t]he principles that must guide our inquiry" into a statute's meaning "are well settled but worth repeating." *United States v. Webber*, 536 F.3d 584, 593 (7th Cir. 2008). Specifically,

> [i]n analyzing the language of a statute, we give the words their ordinary meaning unless the context counsels otherwise. *McCarthy v. Bronson*, 500 U.S. 136, 139 (1991) (explaining that "statutory language must always be read in its proper context"). When the plain wording of the statute is clear, that is the end of the matter. *BedRoc, Ltd. v. United States*, 541 U.S. 176, 183 (2004) (noting that the task of statutory interpretation "ends there [if] the text is unambiguous"). The "plain meaning" of a statute, however, is often illuminated not only by its language but also by its structure. *Alexander v. Sandoval*, 532 U.S. 275, 288

(2001); *Marie O. v. Edgar*, 131 F.3d 610, 622 (7th Cir. 1997). "Context, not just literal text, will often lead a court to Congress' intent in respect to a particular statute." *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 127 (2005) (Breyer, J., concurring); *Dersch Energies, Inc. v. Shell Oil Co.,* 314 F.3d 846, 856 (7th Cir. 2002) (noting that a statute must be "construed in its proper context").

*Webber*, 536 F.3d 584, 593-94 (parallel citations omitted). We, therefore, turn our attention to the statutory text.

Section 2679 of Title 28 provides in relevant part:

(b)(1) The remedy against the United States provided by sections 1346(b) and 2672 of this title for injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim or against the estate of such employee. Any other civil action or proceeding for money damages arising out of or relating to the same subject matter against the employee or the employee's estate is precluded without regard to when the act or omission occurred.

(2) Paragraph (1) does not extend or apply to a civil action against an employee of the Government—

(A) which is brought for a violation of the Constitution of the United States, or

(B) which is brought for a violation of a statute of the United States under which such action against an individual is otherwise authorized.

. . .

(d)(1) Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.

. . .

(4) Upon certification, any action or proceeding subject to paragraph (1), (2), or (3) shall proceed in the same manner as any action against the United States filed pursuant to section 1346(b) of this title and shall be subject to the limitations and exceptions applicable to those actions.

28 U.S.C. § 2679.

Section 2679(b)(1) shelters federal employees from liability "for injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission" of the employee "while acting within the scope of his office or employment"; it accomplishes this by transforming the action against the employee into one against the federal Government. There are only two discrete categories of cases to which this protection does

not apply: (1) a claim "brought for a violation of the Constitution of the United States," and (2) a claim "brought for a violation of a statute of the United States under which such action against an individual is otherwise authorized." 28 U.S.C. § 2679(b)(2).

When a claim of wrongful conduct is brought against a government official in his individual capacity, and the claim does not fall within the specified exceptions to immunity in § 2679(b)(2), the Attorney General's certification that the defendant was acting within the scope of his employment requires substitution of the United States as a defendant. The suit then proceeds as though it had been filed against the United States under the FTCA. As such, it is subject to the "limitations and exceptions" applicable to cases brought pursuant to the FTCA. 28 U.S.C. § 2679(d)(4).

**B. Substitution**

In this case, the parties agree on most aspects of the Westfall Act's application to the facts as alleged in Mr. Sobitan's complaint. The parties agree that Mr. Sobitan's action is "for injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment" and, therefore, falls within the general coverage of the Westfall Act. 28 U.S.C. § 2679(b)(1). Furthermore, they agree that, absent an exception to coverage, the United States properly was substituted as a party. Finally, they agree that the action cannot proceed

against the United States because the United States has not waived its sovereign immunity generally with respect to claims brought pursuant to international treaties.

The only issue on which the parties disagree, and, therefore, the focus of our efforts, is whether the present action "is brought for a violation of a statute of the United States" and, as a result, is exempted from the Westfall Act's substitution provision. Mr. Sobitan claims that his action for damages for violation of consular rights afforded him by Article 36 of the Vienna Convention is an action "brought for a violation of a statute of the United States under which such action against an individual is otherwise authorized." In short, Mr. Sobitan believes that the Vienna Convention should be considered a statute for purposes of § 2679(b)(2)(B).

### 1.

Mr. Sobitan first claims that the "plain and ordinary" meaning of the term statute includes "self-executing treaties ratified by the United States, including Article 36 of the Vienna Convention." Appellant's Br. 9. We cannot accept this argument.

Section 2679(b)(2)(B) creates an exception for "statute[s] of the United States." The plain and ordinary meaning of the term "statute of the United States" is a bill enacted in accordance with the procedures set forth in Article I of the Constitution, that is, passed by both houses of Congress and signed by the President. Judicial use of the term "statute" bears out this meaning. *See, e.g., United*

*States v. Vuitch*, 402 U.S. 62, 64-65 (1971) (observing that "[a] piece of legislation" applicable only in the District of Columbia "is nevertheless a 'statute' in the sense that it was duly enacted into law by both Houses of Congress and was signed by the President"); *INS v. Chadha*, 462 U.S. 919, 954 (1983) ("[R]epeal of statutes, no less than enactment, must conform with Art. I."); *Hamdan v. Rumsfeld*, 548 U.S. 557, 668 (2006) (Scalia, J., dissenting) (noting that "the language of the statute that was actually passed by both Houses of Congress and signed by the President is our only authoritative and only reliable guidepost" as to statutory meaning); *In re Sanders*, 551 F.3d 397, 402 (6th Cir. 2008) (observing that "[t]he most conspicuous place to look for the purpose of a law of course is the text of *the statute* that both houses of Congress passed and that the President signed into law" (emphasis added)); *United States v. Fields*, 500 F.3d 1327, 1334 (11th Cir. 2007) ("We should never forget that the law is what the statute itself says after it is approved by both houses of the legislature and signed by the President."); *Atlantic City Elec. Co. v. F.E.R.C.*, 295 F.3d 1, 11 (D.C. Cir. 2002) (observing that a regulation cannot "be the basis for denying the petitioners their rights provided by a statute enacted by both houses of Congress and signed into law by the president"). Indeed, on more than one occasion, the Court has observed that there is "abundant support for the conclusion that the power to enact *statutes* may only 'be exercised in accord with a single, finely wrought and exhaustively considered, procedure,'" specifically, passage by both houses of Congress and signature by the President. *Clinton v. City*

*of New York*, 524 U.S. 417, 440 (1998) (quoting *Chadha*, 462 U.S. at 951; emphasis added).

In contrast to the multiple examples of common usage previously set forth, Mr. Sobitan has not come forward with any example, either in statutory or common law, that has defined or interpreted the term "statute" to include treaties. Instead, Mr. Sobitan points to *American Federation of Labor v. Watson,* 327 U.S. 582, 592 (1946), in which the Court held that a state constitutional provision constitutes a "statute" for purposes of § 266 of the Judicial Code.[4] Similarly, Mr. Sobitan relies on *Stevens v.*

---

[4] In *American Federation of Labor v. Watson*, 327 U.S. 582 (1946), the Court addressed whether the case before it, which involved an injunction against the enforcement of a state constitutional provision, was a proper subject for a three-judge panel under § 266 of the Judicial Code. The Court explained:

The statute provides that only a three-judge court may issue an interlocutory injunction suspending or restraining "the enforcement, operation, or execution of any statute of a State by restraining the action of any officer of such State in the enforcement or execution of such statute." § 266 of the Judicial Code, 28 U.S.C. § 380. The question is whether within the meaning of that section "statute" is restricted to legislative enactments or includes provisions of state constitutions as well. It is sometimes used to embrace all enactments, however adopted, to which a State gives the force of law. *See Stevens v. Griffith,* 111 U.S. 48, 50 [(1884)]. In speaking of § 266 we recently said, "To bring this procedural device into play—to dislocate the normal operations of the system

(continued...)

*Griffith*, 111 U.S. 48 (1884), in which the Court commented on its authority to review a state's enforcement of a law of the confederacy. The Court stated:

> If enforced as a law there it would be considered as a statute, not of the confederacy, but of the state, and treated accordingly. Any enactment, to which a state

---

[4] (...continued)
of lower federal courts and thereafter to come directly to this Court—requires a suit which seeks to interpose the Constitution against enforcement of a state policy, whether such policy is defined in a state constitution or in an ordinary statute or through the delegated legislation, of an 'administrative board or commission.' The crux of the business is procedural protection against an improvident state-wide doom by a federal court of a state's legislative policy. . . ." It would, as the court below stated, be somewhat incongruous to hold that a single judge, while prohibited from enjoining action under an act of the state legislature, would be free to act if the state constitution alone were involved. The policy underlying § 266 admits no distinction between state action to enforce a constitutional provision and state action to enforce an act of the legislature. There is no suggestion in the history of § 266 that Congress was willing to give the federal courts a freer hand when state constitutional provisions were involved. In our view the word "statute" in § 266 is a compendious summary of various enactments, by whatever method they may be adopted, to which a State gives her sanction and *is at least sufficiently inclusive to embrace constitutional provisions*.

*Id.* at 591-93 (parallel citations omitted; emphasis added).

gives the force of law, whether it has gone through the usual stages of legislative proceedings or been adopted in other modes of expressing the will of the state, is a statute of the state within the meaning of the acts of congress touching our appellate jurisdiction.

*Id.* at 50. In short, the Court held that, because the state enforced a law of the confederacy as its own, the Court had jurisdiction to examine the claim that the law was contrary to the Constitution.

Neither of the cases on which Mr. Sobitan relies, however, speaks to the issue here: Whether the plain meaning of the term statute includes treaties. At most, the cases relied upon by Mr. Sobitan demonstrate that, in some contexts, the term "statute" may take on a special meaning.

**2.**

Seizing on this idea, Mr. Sobitan next argues that the term "statute" is ambiguous, and, therefore, the court must look to legislative history to inform our interpretation.

However, "[a]mbiguity is a creature not of definitional possibilities but of statutory context." *Brown v. Gardner*, 513 U.S. 115, 118 (1994) (citing *King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991)). Here, the statutory context makes it clear that "statute" does not have the broader meaning of any enactment—such as the Constitution or a treaty—that has the force of law. As previously set forth, § 2679(b)(2) provides:

(2) Paragraph (1) does not extend or apply to a civil action against an employee of the Government—

> (A) which is brought for a violation of the Constitution of the United States, or

> (B) which is brought for a violation of a statute of the United States under which such action against an individual is otherwise authorized.

28 U.S.C. § 2679(b)(2). If Congress had meant the term "statute of the United States" in § 2679(b)(2)(B) to include all enactments with the force of law—including constitutions and treaties—there would have been no reason to have a separate section, here § 2679(b)(2)(A), which excepts claims for violations of the Constitution. Indeed, adopting the broader definition of the term "statute" urged by Mr. Sobitan would render subsection (b)(2)(A) superfluous, a result we try to avoid. *See, e.g.,* *United States v. Berkos*, 543 F.3d 392, 396 (7th Cir. 2008) ("We avoid interpreting a statute in a way that renders a word or phrase redundant or meaningless.").

### 3.

Mr. Sobitan next maintains that "treaties are recognized as 'laws' of the United States, a term generally synonymous with 'statutes.'" Appellant's Br. 12. In essence, Mr. Sobitan posits that, because treaties are laws and because statutes also are laws, the two are one in the same. There is no reason, however, to believe that two subsets (statutes and treaties) of the same larger set (laws) are interchangeable with one another. Indeed, Mr. Sobitan

has not pointed to a single authority that uses the terms statute and treaty interchangeably. Instead, all of Mr. Sobitan's authorities stand for the unremarkable principle that treaties, along with the Constitution and the laws of the United States, "shall be the supreme Law of the Land." U.S. Const. Art. VI, cl.2. For example, Mr. Sobitan points to *Whitney v. Robertson*, 124 U.S. 190, 194 (1888), which states:

> By the constitution, a treaty is placed on the same footing, and made of like obligation, with an act of legislation. Both are declared by that instrument to be the supreme law of the land, and no superior efficacy is given to either over the other. When the two relate to the same subject, the courts will always endeavor to construe them so as to give effect to both, if that can be done without violating the language of either; but, if the two are inconsistent, the one last in date will control the other.  . . .

Again, the Court merely acknowledges that the Constitution places treaties and statutes on the "same footing"; however, both the Constitution and the Court explicitly differentiate between "act[s] of legislation" and "treat[ies]." *Id.*

**4.**

Finally, we note that every court to consider the issue has determined that the Westfall Act's exemption for statutory claims does not include claims brought pursuant to a treaty. In *Bansal v. Russ*, 513 F. Supp. 2d 264

(E.D. Penn. 2007), the plaintiff asserted, among other claims, a violation of his consular rights under Article 36 and invoked the Alien Tort Statute, 28 U.S.C. § 1350, as the basis for his right to recover. The district court held:

Article 36 of the Vienna Convention on Consular Relations requires that an arrested foreign national be informed of his right to contact his consulate. Vienna Convention on Consular Relations, Apr. 24, 1963, 21 U.S.T. 77, T.I.A.S. No. 6820, 596 U.N.T.S. 261, Art. 36. The Alien Tort Statute ("ATS") establishes jurisdiction in the district courts over civil actions by aliens for torts committed in violation of a treaty of the United States. *Jogi v. Voges*, 480 F.3d 822, 825 (7th Cir. 2007) (citing *Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004)). The ATS does not itself create a cause of action; rather, it provides a procedural mechanism through which an alien Plaintiff may bring suit for violation of the law of nations or a treaty of the United States. *Turkmen v. Ashcroft*, Civ. A. No. 02-2307, 2006 WL 1662663, at *50 (E.D.N.Y. June 14, 2006).

The Liability Reform Act provides that for civil actions based on the wrongful conduct of federal employees acting within the scope of their employment, the only remedy is an action under the Federal Tort Claims Act ("FTCA") against the United States itself. 28 U.S.C. § 2679(b)(1). *The only two exclusions to the Liability Reform Act—constitutional claims and for claims based on statutes of the United States which authorize actions against an individual—do not apply to Plaintiff's claim under Article 36. See Turkmen*, 2006 WL 1662663, at *50.

*Bansal*, 513 F. Supp. 2d at 280 (parallel citations omitted; emphasis added). In short, the district court realized that Article 36 had to be the source of the plaintiff's substantive relief, but determined that claims under Article 36 did not fall within the Westfall Act's exception for violations of a "statute of the United States."

This rationale is not limited to claims brought pursuant to the Vienna Convention, but claims asserted pursuant to other treaties as well. For instance, in *In re: Iraq and Afghanistan Detainees Litigation,* 479 F. Supp. 2d 85 (D.D.C. 2007), the district court stated:

> The plaintiffs' argument that Geneva Convention IV, a treaty, also falls within the statutory exception to the Westfall Act is equally unsound. Because the term "statute" is undefined, this Court will again resort to traditional cannons of statutory interpretation and look to the plain meaning of the word. [*F.D.I.C. v.*] *Meyer*, 510 U.S. [471,] 476 [(1994)]. In this case, the term "statute" is generally recognized to mean "a law enacted by the legislative branch of a government." Merriam-Webster's Collegiate Dictionary at 1149. The Westfall Act exception for violations of statutes further states that it applies to statutes "of the United States." 28 U.S.C. § 2679(b)(2)(B). Thus, taken as a whole, the Westfall Act's exception unmistakably applies to a law enacted by the legislative branch of the United States, *i.e.*, Congress. Treaties are not enacted by the legislative branch. Treaties are international agreements made by the President with the advice and consent of Con-

gress pursuant to Article II of the Constitution. *See, e.g.*, Restatement (Third) of the Foreign Relations Law of the U.S. § 303 cmt. a (1987). *See also Whitney v. Robertson*, 124 U.S. 190, 194 (1888) (stating that "[a] treaty is primarily a contract between two or more independent nations, and is so regarded by writers on public law"). *Because Geneva Convention IV is not a law enacted by Congress it does not fall within the Westfall Act's exception for statutes.*

*Id.* at 112 (parallel citations omitted; emphasis added).

In sum, the term "statute of the United States," as used in § 2679(b)(2)(B), means a law of the United States passed by both houses of Congress and signed by the President; it does not encompass treaties. Thus, Mr. Sobitan's claim for relief for violation of his rights under the Vienna Convention does not fall within an exception to the Westfall Act's substitution provision. Consequently, the district court correctly substituted the United States as defendant, and Mr. Sobitan's claim must proceed against the United States.

## C. Dismissal

As we already have noted, once the Attorney General has certified that an individual Government officer was acting within the scope of his employment at the time of the incident in question, any claim based on the incident "shall proceed in the same manner as any action against the United States filed pursuant to section 1346(b) of this title and *shall be subject to the limitations and exceptions*

*applicable to those actions.*" 28 U.S.C. § 2679(d) (emphasis added). We turn, therefore, to 28 U.S.C. § 1346(b) to determine if any limitations or exceptions set forth in that section preclude Mr. Sobitan's Vienna Convention claim against the United States.

For its part, 28 U.S.C. § 1346 grants "exclusive jurisdiction" to the district courts for

> civil actions on claims against the United States, for money damages, . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). The Court has held that "the scope of jurisdiction" set forth in § 1346 is coextensive with the United States' "waiver of sovereign immunity." *F.D.I.C. v. Meyer*, 510 U.S. 471, 479 (1994). In other words, the United States has waived its sovereign immunity only with respect to claims described in § 1346(b), specifically claims for which a private person "would be liable to the claimant in accordance with the law of the place where the act or omission occurred."[5]

---

[5] As noted earlier in the text, the parties do not contend that any other statute waives the sovereign immunity of the United States in cases such as this one. *Cf. F.D.I.C. v. Meyer*, 510

(continued...)

In *Meyer*, the Supreme Court explained in some detail the meaning of this language and how it precluded the plaintiff from pursuing the constitutional claim at issue in that case:

> As noted above, to be actionable under § 1346(b), a claim must allege, *inter alia*, that the United States "would be liable to the claimant" as "a private person" "in accordance with the law of the place where the act or omission occurred." . . . [W]e have consistently held that § 1346(b)'s reference to the "law of the place" means law of the State—the source of substantive liability under the FTCA. See, *e.g.*, *Miree v. DeKalb County*, 433 U.S. 25, 29, n.4 (1977); *United States v. Muniz*, 374 U.S. 150, 153 (1963); *Richards* [*v. United States*, 369 U.S. 1,] 6-7, 11 [(1962)]; *Rayonier Inc. v. United States*, 352 U.S. 315, 318 (1957). By definition, federal law, not state law, provides the source of liability for a claim alleging the deprivation of a federal constitutional right. To use the terminology of *Richards*, the United States simply has not rendered itself liable under § 1346(b) for constitutional tort claims.

*Id.* at 477-78 (parallel citations omitted).

The Court's reasoning in *Meyer* applies with equal force to claims brought pursuant to international treaty. An

---

5 (...continued)
U.S. 471, 480-83 (1994) (considering whether a source other than § 1346(b) provided a waiver of sovereign immunity that would allow the plaintiff's claim to proceed).

international treaty is no more the law of the place than the federal Constitution, and, therefore, under § 1346(b), the United States "simply has not rendered itself liable" for these types of claims.

In sum, once the Government has been substituted for a federal officer under 28 U.S.C. § 2679(b), the action must proceed against the United States and is subject to the "limitations and exceptions" for claims brought pursuant to 28 U.S.C. § 1346(b). One limitation is that the source of substantive law on which the plaintiff relies must be "the law of the place where the act or omission occurred," that is, state tort law. If the plaintiff's claim is not cognizable under state tort law, it does not fall within the sovereign's waiver of immunity and must be dismissed.[6]

---

[6] We note that Congress has enacted a very different statutory scheme to govern state employees. Section 1983 of Title 42 grants an affirmative right to any "citizen . . . or other person" to seek redress for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States by anyone acting under color of state law. 42 U.S.C. § 1983. Thus, § 1983 provides a means for an individual to vindicate a *state* officer's alleged violation of consular rights under Article 36 of the Vienna Convention. *See Jogi v. Voges*, 480 F.3d 822, 826-28 (7th Cir. 2007). By contrast, Congress has not enacted an equivalent statutory right to proceed against federal employees. Instead, it has provided federal employees an affirmative protection from suit through the substitution provision of the Westfall Act and further has limited the possibility of redress by making any action subject to the exceptions and limitations applicable to actions against the sovereign.

Here, the source of Mr. Sobitan's claims is not state tort law, but international treaty.[7] His claim, therefore, does not fall within the United States' waiver of its sovereign immunity in § 1346(b), and the district court properly dismissed his claim.

## Conclusion

For the reasons set forth above, we affirm the judgment of the district court.

AFFIRMED

---

[7] Even if we could not reach this conclusion based on the Court's rationale in *Meyer*, Mr. Sobitan has acknowledged that the FTCA does not provide a remedy for the claims set forth in his complaint. *See* Appellant's Supp. Br. 4 (observing that "[c]laims asserting violations of treaties do not arise under state tort law, and therefore are not within the coverage of the FTCA").